95 N.J. Super. 418 (1967)
231 A.2d 389
BERNARD S. SUSSMAN, M.D., AND DOMINICK A. SCIALABBA, M.D., PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
OVERLOOK HOSPITAL ASSOCIATION, A NON-PROFIT NEW JERSEY CORPORATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND TOWN OF WESTFIELD, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1967.
Decided June 15, 1967.
*420 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Nicholas Conover English argued the cause for appellant and cross-respondent (Messrs. McCarter & English, attorneys; Mr. Woodruff J. English and Mr. Stanley R. Stevinson, of counsel and on the brief).
Mr. Richard H. Thiele, Jr. argued the cause for respondents and cross-appellants (Messrs. Wharton, Stewart & Davis, attorneys).
PER CURIAM.
Plaintiffs, neurosurgeons of admittedly high professional competency and with offices in Westfield, New Jersey, applied for staff privileges at Overlook Hospital in Summit, whose services include the Westfield area. The hospital's board of trustees, upon the recommendation of the credentials committee, rejected their applications and so notified them without giving any reasons therefor. It denied their request for a hearing. It did, however, through its attorneys, subsequently advise plaintiffs' attorneys that "some of the reasons" for the rejection were that the applicants already *421 had staff appointments at Muhlenberg Hospital in Plainfield and Perth Amboy Hospital, so that the hospital "is not depriving him [Dr. Sussman] of a place in which to practice"; that Westfield "is also served by Muhlenberg and Rahway"; and "Overlook has sufficient neurosurgeons on its staff for patients served by Overlook."
Plaintiffs sued in the Chancery Division to compel defendant hospital association to accord them staff privileges. After a plenary trial, Judge Mintz entered a judgment on September 12, 1966 directing defendant to admit plaintiffs to medical staff privileges at Overlook Hospital unless within 90 days of the date of the judgment defendant formulated "the necessary procedures in order to insure a fair and thorough determination of plaintiffs' applications for medical staff privileges, all in accordance with the opinion of this court dated July 28, 1966." Defendant appeals from that judgment.
Plaintiffs cross-appeal from so much of the judgment as dismissed the counts against Town of Westfield and from the provision that the hearing before the hospital's board of trustees need not be a "formal judicial or quasi-judicial hearing" and that "it is not essential that plaintiffs be afforded the right to confront and cross-examine witnesses or to be represented by counsel in the presentation of their case before the hospital authorities." It was directed, however, that there should be "a complete record which may be the subject of judicial review."
We affirm essentially for the reasons expressed by Judge Mintz in his opinion, adding only the further comments hereinafter set forth as to some of the arguments advanced on this appeal.
Defendant takes the position that it is a private hospital and its board of trustees has the absolute discretion to reject the application of any doctor for staff privileges. Under that view the courts would be powerless to grant any relief under the circumstances herein. Overlook Hospital is a private hospital in the sense that its operation is nongovernmental. But it is, in substance and effect, public in character *422 and scope. Its services are available to the general public. It appeals to the public for financial assistance in its annual drives for money. It receives appropriated public moneys from the municipalities it services, including Westfield. The concept that a hospital, such as Overlook, may arbitrarily deny staff privileges to a qualified doctor was rejected by our Supreme Court in Greisman v. Newcomb Hospital, 40 N.J. 389, 401 (1963). It held that the hospital's power to pass on staff membership applications was "a fiduciary power to be exercised reasonably and for the public good." That rule of law is binding upon us and upon defendant hospital association herein.
Plaintiffs qualify for staff privileges under the hospital's own by-laws. They provide that an applicant for staff privileges must be legally licensed to practice medicine in this State, a member in good standing of the medical society of the county in which he is practicing, and shall have established an office in the geographical area served by Overlook Hospital as designated by the board of trustees. The by-laws make no provision for a hearing at the request of an applicant who has been denied staff privileges.
However, compliance with the minimum requirements of the by-laws does not make the grant of staff privileges automatic. The board of trustees does have the right to reject an application so long as it acts in a fair manner and for valid reasons. It is charged with the responsibility of administering the affairs of the hospital in an orderly and efficient manner and for the purposes for which the hospital has been established. We would not deny it all discretion in weighing the general good of the hospital, the public and the other members of the medical staff and the hospital personnel, against the claim of a doctor for staff privileges. On the other hand, hospital officials may not preclude staff membership in a hospital such as Overlook "for a reason unrelated to sound hospital standards and not in furtherance of the common good." Greisman, supra, 40 N.J., at p. 404.
*423 Dr. Steinberg, administrator of Mt. Sinai Hospital in New York City, summed up the proper rules of guidance which ought to control the evaluation of applications for medical staff privileges, when he testified that three qualifications are necessary, viz., (1) professional competency; (2) compliance with the code of ethics, and (3) the right character. Elaborating upon the third factor, he explained that it meant that the applicant must have a "capacity to cooperate * * * willingness to abide by a staff organization * * * a cooperative citizen in a medical community."
As Judge Mintz pointed out, the "real reason" why plaintiffs' applications were denied  especially that of Dr. Sussman  was not any of those set forth in the letter sent by the hospital's attorney, but rather "personality problems" allegedly generated by Dr. Sussman as a member of the staffs of Muhlenberg and Perth Amboy hospitals. Mr. Hoyt, administrator of Perth Amboy General Hospital, in response to a questionnaire sent by Overlook, had given a negative answer to the following questions:
"Does he get along well with other members of the Medical Staff as well as the nursing staff?"
"Did he follow hospital policies and procedures, administrative and medical?"
In the space reserved for additional comments appeared the following:
"I would suggest that you contact Mr. Frank Sauer, Director Muhlenberg, who is in a position to give you a complete rundown on this doctor and his attitude and the problems that he creates. They have been extensive here."
Mr. Sauer, administrative director of Muhlenberg Hospital, answered the above two questions as follows:
"With some members  not with others."
"Usually, but has frequently challenged and questioned established procedures and authority."
*424 Mr. Sauer did not make any additional comments.
Prior to the credentials committee meeting Mr. Heinlein, director of Overlook Hospital, telephoned both Mr. Hoyt and Mr. Sauer concerning their answers to the questionnaire. He then sent a memorandum to the credentials committee to the effect that he had been informed "by reliable sources" at both Perth Amboy and Muhlenberg Hospitals that Dr. Sussman, although competent professionally, "has been very difficult in personal relationships within the hospital, and very difficult to get along with and to please." He recommended that since the doctor "already has an appointment at Muhlenberg which is one of the hospitals serving the Westfield area, I see no reason for his appointment to the Overlook staff." Quite obviously, the latter suggestion was being offered as a basis for the rejection in order to avoid a frank expression of the real reason for denying the application. viz.. that Dr. Sussman was not welcome because of the potential problems he might create at Overlook, as he had already created at the other hospitals.
We agree with the conclusion of Judge Mintz that Overlook's board of trustees owed a duty to Dr. Sussman and the public to conduct a more substantial inquiry into the fitness of Dr. Sussman to serve on its medical staff than the mere unilateral inquiries it made and information it gathered without according the doctor an opportunity to be heard. Conscientious physicians should not be deterred from speaking out against abuses in hospital practices by the fear that their criticisms to improve the quality of patient care may result in their being denied staff privileges in some other hospital solely by reason thereof.
This is not to say that Overlook's board of trustees may not reasonably consider the factor of prospective disharmony, as Judge Mintz properly pointed out. But, as a fiduciary owing a duty to all concerned, valid and constructive criticism of hospital practices at Muhlenberg and Perth Amboy is not necessarily to be equated with potential disharmony at Overlook. The occasions which gave rise to the *425 criticisms at those other institutions may have justified their having been made. To accept the personality evaluation of a doctor by those whom he may have criticized, without hearing the other side of the story, is not an adequate fulfillment of the fiduciary obligation owed in passing upon an application for medical staff membership.
Dr. Sussman's so-called "personality problems" seemingly stem not so much from any lack of verity in the criticism made by him, but rather in the manner in which he expresses his criticisms. A person has a right to disagree with a policy or a practice, but he does not have a right to be disagreeable in doing so. Constructive criticism properly expressed can be salutary and lead to a betterment of conditions. Destructive criticism can become obnoxious and disruptive of morale and good public relations. To be critical is one thing; to be hypercritical is quite another. A board of trustees of a hospital may weigh the several contending factors in determining in a fair and reasonable manner the desirability of accepting a doctor's application for staff membership.
We agree that the necessary procedures should be formulated by defendant in order to insure a fair and thorough determination of plaintiffs' applications. As Judge Mintz stated: "Such procedure should provide for the applicant to appear in person if he so desires and present witnesses and appropriate documents." At the same time, the inquiry should not be equated to that of a trial-type hearing. A board of trustees of a hospital does not have the power to subpoena witnesses or administer oaths. All that is required is for the board to be fully informed so that it may make an intelligent and reasonable judgment in good faith upon all the facts presented.
We concur in the ruling by Judge Mintz that it is not essential that plaintiffs be afforded the right to confront and cross-examine witnesses or to be represented by counsel in the presentation of their case. It is within the discretion *426 of the board of trustees as to whether counsel may attend the hearing and participate in the proceedings.
We observe, finally, that a voluminous record has been compiled as the result of the plenary trial before Judge Mintz. There is no good reason why that testimony and any other supplementary evidence, offered at the prescribed hearing and not previously before the board of trustees when it rejected the applications, cannot now be considered by the board in re-evaluating the applications, without an unnecessary and time-consuming repetition of proofs already in the record.
The judgment is affirmed and the matter is remanded to the Chancery Division for such implementation of the judgment as may become necessary. We do not retain jurisdiction. No costs.