114 N.J. Super. 287 (1971)
276 A.2d 165
TANYA TIBBS, INFANT, BY HER GUARDIANS, MR. & MRS. HAROLD DIGGS; NELLIE HARRELL, INFANT, BY HER GUARDIANS, MR. AND MRS. SAMUEL SPURGEON; GENSEY LAWRENCE, INFANT, BY HER GUARDIANS, MR. & MRS. NORRIS LAWRENCE; DENISE AVERETTE, INFANT, BY HER GUARDIANS, MR. & MRS. WILLIE AVERETTE, AND OTHERS SIMILARLY AFFECTED, APPELLANTS,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF FRANKLIN (SOMERSET COUNTY), RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1971.
Decided March 30, 1971.
*288 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. James B. Ventantonio (Director, Somerset County Legal Services) argued the cause for appellants (Messrs. Michael D. Lang and William J. Zaino on the brief).
Mr. Leonard N. Arnold argued the cause for respondent.
PER CURIAM.
The expulsions of appellants are reversed and set aside for failure to produce the accusing witnesses for testimony and cross-examination.
The matters are remanded to the Commissioner of Education for rehearing de novo of the charges on which appellants were expelled should the local school authorities choose to prosecute them. No costs.
CONFORD, P.J.A.D. (concurring)
The per curiam opinion of the court represents what all the members of the court can agree upon. I herewith supplement that determination with my own reasons for joining therein and my own more specific views as to what the Commissioner of Education should do and the local school authorities may do at this juncture.
We granted leave to appeal an interlocutory decision of the State Commissioner of Education, but denied appellants' request for ad interim readmission to classes at Franklin High School from which they had therefore been expelled or suspended for an alleged physical assault upon other students said to have occurred October 7, 1970. (All were ultimately expelled.) The Supreme Court on motion thereafter *289 directed the appellants to be readmitted to school, subject to good behavior, pending determination of this appeal.
The sole issue presented is whether a high school student may be expelled from school on the charge of physical assault upon another student where the hearing conducted by the local board of education on the charge is not preceded by identification to the accused of the accusing student witnesses whose ex parte statements the school administration has relied on in bringing the disciplinary proceedings and where such witnesses do not appear to testify at the hearing. My view, and I believe that of the court, is that this procedure denies due process to the student so expelled, and this notwithstanding a determination by the local board, held warranted by the State Commissioner, that the student witnesses were afraid to testify because of fear of physical reprisal and should not be compelled to do so against their will.
On October 7, 1970, according to hearsay testimony adduced before the local board and the Commissioner, two students at the school, sisters, were assaulted by a group of others, all or mostly girls, while all were walking home after classes, a short distance from the school exits. They were struck with a stick, pushed to the ground and jumped upon or kicked, and some of their possessions were taken from them and purloined or scattered. One of them sustained the destruction of her eyeglasses. Both had minor injuries. They ran, crying, back to the guidance office at the school. It appears that neither could, or was willing to, identify any of their attackers. But a number of student witnesses volunteered statements to the school authorities identifying appellants and others (about ten in all) as involved in the episode. They were apparently assured, upon request, that they would not be identified to the accused students because of fear of physical retaliation.
The alleged assailants were, so far as available, called in for interviews, and generally denied complicity. But some stated they were in the vicinity and had seen part of the events. In the case of appellant Tanya Tibbs, statements *290 of other students supporting her defense that she had seen but not participated in the occurrence were proffered to the school authorities by her parents, but investigation thereof failed to satisfy the authorities that the prima facie case against her had been impaired. We are informed that initial suspensions were imposed upon a total of ten students. After informal hearings the suspensions were lifted as to five of the accused, but the other five, including the four present appellants, were expelled by the board of education after hearings substantially of the kind afforded Tanya, and described hereafter.
Tanya was originally notified of a suspension to begin October 13, 1970 and to terminate November 16. (She remained out of school until the Supreme Court order of January 25, 1971.) Tanya's parents were given notice October 27, 1970 by the superintendent of schools that the board of education would meet November 2, 1970 for a full hearing to consider the recommendation of the school principal and himself that the girl be expelled from school for "assault upon a student of Franklin High School"; that they could be represented by an attorney; that the vice-principal and principal would testify and be subject to cross-examination, and that signed statements of student witnesses would be presented but that such students would not appear at the hearing. The accused pupil would have the right to present testimony of witnesses or a signed statement by any witness not desiring or able to attend.
The hearing was postponed to November 9, 1970 at the request of Tanya's attorney but the latter was informed that the statements of the student witnesses to be provided would not be signed or identified.
At the hearing before the board the principal and vice-principal of the high school testified concerning their investigation and the informal hearings they conducted as to the incident, resulting in findings and conclusions by them substantially to the effect indicated above, including that of Tanya's guilt. The principal also testified that he had received *291 a telephone call from the mother of one of the accused students threatening the life of one of the prospective student witnesses. There was testimony that the student witnesses were in terror of retaliation if their identity was revealed to the accused students. The principal explained that the problem he faced in deciding whether to produce the children to testify was "a two-fold one: What happens within the confines of a racially tense school; and my own concern for the continued safety of the students involved." (It seems agreed there has been a history of racial conflicts at the school.) The board voted to accept into evidence unsigned and unidentified statements by student witnesses, and three such were read into the record. In each such statement Tanya was identified as one of those "doing the hitting." A statement by the victims, identified as the Cornwell sisters, was also read. This described the occurrence but omitted identification of any assailant.
The attorney for Tanya objected throughout the hearing to the failure to identify and produce and subject to cross-examination any of the accusing witnesses whose statements were read. On the basis of that deficiency he refused to adduce defensive testimony by or on behalf of his client. He had also at the outset of the hearing moved that two members of the board disqualify themselves as prejudiced because of public statements previously made by them concerning the incident and alleged antecedent related occurrences. The motion was denied.
The board of education thereupon voted Tanya guilty and then took testimony concerning her prior disciplinary record in school. This was generally poor. After argument by counsel against expulsion the board voted that determination.
Tanya filed an appeal against the expulsion with the Commissioner of Education and petitioned him for ad interim relief of admission to classes pending adjudication. A hearing on the petition was conducted November 20, 1970 before the Division of Controversies and Disputes at which the school principal testified to the substance of what had been *292 adduced before the local board. On December 1, 1970 the Commissioner of Education denied ad interim relief. He expressly decided that the procedure used by the local board comported with due process and that he was satisfied by the testimony of the principal "that school officials had sufficient cause for concern regarding the safety of potential student witnesses" so as to justify not "releasing the students' names" or permitting their cross-examination.
It is not necessary here to pursue in detail the long and uneven development of the law over the past century concerning appropriate procedures in school and college student disciplinary proceedings. See Annotations, 58 A.L.R.2d 903 (1958); A.L.R.2d Later Case Service (56-63 A.L.R.2d) at 219; the extensive survey of authorities and literature in R.R. v. Board of Education, Shore Reg. H.S., 109 N.J. Super. 337 (Ch. Div. 1970); Note, 41 Temple L.Q. 349 (1968); Abbott, "Due Process and Secondary School Dismissals," 20 Case Western Reserve L. Rev. 378 (1969).
To summarize briefly, the early cases, particularly in relation to proceedings below the college level, generally did not recognize due process concepts as appropriate to the exercise of discipline of students, even in the case of expulsion. The idea of the school administrators being in loco parentis to students of secondary and primary grade level held some sway. In the course of time, however, when the sanction applied for misconduct was expulsion or suspension of severe duration, especially in college-level cases, the decisions began to speak in terms of hearing requirements of due process. But a variety of expressions can be found in the cases as to the specifics of fair hearings or due process, particularly in relation to such claimed incidents as the right of counsel, personal appearances of accusing witnesses, and the right of cross-examination of such witnesses by the defense. The variations are probably explainable on the basis of the diversity of attendant circumstances in different cases  the nature of the offense; nature of the prosecuting and adjudicating entities; ages of the accused students and of *293 witnesses; stage of the proceedings in the entirety of the process of investigation, punishment-treatment and review; and effect of statutory provisions, e.g., as to right to subpoena witnesses or to counsel, or the absence thereof, etc. See Madera v. Board of Education, City of New York, 386 F.2d 778 (2 Cir.1967), cert. den. 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed. 2d 284 (1968); Schwartz v. Schuker, 298 F. Supp. 238 (E.D.N.Y. 1969).
Our own statutes are rudimentary. N.J.S.A. 18A:37-2 provides that certain types of pupil misbehavior, including "d. physical assault upon another pupil * * *" may be attended by "suspension or expulsion from school." A principal may suspend any pupil `for good cause" but must report it forthwith to the superintendent of schools. The superintendent must report the suspension to the board of education at its next regular meeting. Either the principal or superintendent may reinstate the pupil prior to the second regular meeting of the board thereafter unless the board does so at its first meeting. N.J.S.A. 18A:37-4. No suspension may continue beyond the second regular meeting of the board after the suspension unless the board continues it, "and the power to reinstate, continue any suspension reported to it or expel a pupil shall be vested in each board." N.J.S.A. 18A:37-5. No hearing procedures attendant upon suspensions or expulsions are specified.
The leading decision of the modern era relating to fair procedures in college expulsion cases is Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir.1961), cert. den. 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). The guidelines there stated were quoted in full in R.R. v. Board of Education, Shore Reg. H.S., supra (109 N.J. Super. at 349), and need not be repeated here. Basically similar standards were declared in State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.W.2d 822, 826 (Sup. Ct. 1942), cert. den. 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943). In contrast with the particular procedures followed here, the Dixon guidelines require affording the *294 accused student in advance the names of the witnesses against him and a report of the facts they attest to. Cross-examination of witnesses and a "full-dress judicial hearing" is said not to be necessary. (294 F.2d at 159). Some cases, however, seem to suggest the desirability of production of the accusatory witnesses at the hearing and allowance of their cross-examination. Esteban v. Central Missouri State College, 277 F. Supp. 649, 651-652 (W.D. Mo. 1967), approved in the appeal of a later phase of the case, 415 F.2d 1077, 1089 (8 Cir.1969) (per Blackmun, Circuit Judge); semble, Marzette v. McPhee, 294 F. Supp. 562, 567 (W.D. Wis. 1968), and Buttny v. Smiley, 281 F. Supp. 280 (D. Colo. 1968).
Opposing mandatory production at the hearing of prosecution witnesses and cross-examination of them, in addition to the Dixon and Hyman cases, supra, are State ex rel. Ingersoll v. Clapp, 81 Mont. 200, 263 P. 433 (Sup. Ct 1928), cert. den. 277 U.S. 591, 48 S.Ct. 528, 72 L.Ed. 1003 (1928), error dism. 278 U.S. 661, 49 S.Ct. 7, 73 L.Ed. 568 (1928); People ex rel. Bluett v. Board of Trustees, University of Illinois, 10 Ill. App.2d 207, 134 N.E.2d 635, 58 A.L.R. 2d 899 (App. Ct. 1956); semble, Scoggin v. Lincoln University, 291 F. Supp. 161 (W.D. Mo. 1968); Wasson v. Trowbridge, 382 F.2d 807 (2 Cir.1967).
A modern public-school case in which the right of the accused student to hear and cross-examine witnesses against him was sustained, Geiger v. Milford Independent School District, 51 Pa. Dist. & Co. R. 647 (C.P. 1944), stands in contrast with a later decision of a Pennsylvania court of equal standing denying the right to a hearing of that kind as apt to "undermine entire disciplinary machinery of the school system." Mando, etc. v. Wesleyville School District, 81 Pa. Dist. & Co. R. 125 (C.P. 1952).
In R.R. v. Board of Education, Shore Reg. H.S., supra, our Chancery Division held a Dixon-type hearing mandatory as a condition for suspension of indefinite duration of a high school student charged with an assault on another *295 child (off school premises). The New Jersey State Department of Education has heretofore recognized the general requirements of procedural due process in relation to school students facing severe disciplinary sanctions. Scher v. Board of Education, West Orange, 1968 School Law Decisions 92, 95.
There is no issue in the present case as to the necessity for a "fair hearing procedure" antecedent to imposition by a local board of education of the sanction of expulsion of a student for misconduct. Both sides agree on it. The issue is whether student witnesses against the accused must be identified to the accused and be produced and be subject to cross-examination, either (a) generally, or (b) under the circumstances of this case.
It is apparent from the decided cases that due process in the school or college context does not, by the weight of authority, require the production in person and right of cross-examination of adverse witnesses. It does call for identification of such witnesses and for supplying the accused with statements or affidavits by them verifying the charges in advance of the hearing. That much is minimally essential, in an issue over controverted objective conduct, as here, to give the accused a fair opportunity to meet and refute possibly mistaken or unfounded assertions of fact. If, despite the witnesses' fears, their identity must be revealed as a matter of minimum due process to the accused, there would seem little point in precluding the availability of the substantially more revealing personal testimony of the witnesses for the benefit both of the triers of the fact and the defense of the accused children in the search for the truth of the matter. Common experience, moreover, establishes that the right of cross-examination is almost always essential for assurance of an enlightened determination of a contested issue of fact. I therefore conclude that in the context of such a case as this not only should the accusing witnesses be identified in advance but also, as a general matter and absent the most *296 compelling circumstances bespeaking a different course, be produced to testify and to be cross-examined.[1]
Cross-examination of school children witnesses in proceedings like these should, however, be carefully controlled by the hearing officer or body, limited to the material essentials of the direct testimony and not be unduly protracted. Such a proceeding is decidedly not in the nature of a criminal trial nor to be encrusted with all the ordinary procedural and evidential concomitants of such a trial.
It remains to consider the particular objections raised by respondents to identification and examination at the hearing of the accusatory witnesses. I have no inclination to gainsay the determination of the local and state educational officials that these children were in a genuine state of fear over having their identity revealed. Whether the procdural policy adopted and approved at the administrative level for the handling of this matter would be justified, in the attendant circumstances, were the ultimate sanctions imposed substantially less than that of expulsion of the accused, is not the immediate issue here. I discuss that particular contingency later herein. We here confront a decision for expulsion  action which constitutes deprivation of a most drastic and potentially irreparable kind. In that setting compromise with punctilious procedural fairness becomes inacceptable. As was recently stated by a writer on the subject:
The problem can be put in greater perspective by considering the importance of fair procedure to the student involved. He may have as much to fear from the arbitrary use of power at the secondary level as at the college or university level. This is particularly true where the misconduct may result in an expulsion or a lengthy suspension. *297 The stigma of compulsory withdrawal may follow even a high school student for many years after the institution has considered the incident closed. Expulsion or suspension always involves a permanent notation on the student's record which may have long term effects on his ability to achieve entry into college or the job market. Moreover, if the child is unable to return to school, the economics of a premature withdrawal are startling and more tangible evidence of the burden that he must shoulder. [Abbott, op. cit., supra, 20 Case Western Reserve L. Rev., at 382]
At oral argument respondent conceded there was no assurance of early or favorable action on any application for reinstatement after expulsion which might be made by appellants, and it is apparent that admission to schools in other districts, if obtainable at all, would entail payment of a substantial non-resident fee these students could probably ill afford.
As against the interests of the pupils here accused in remaining in school, the school community must be content to deal with threats or intimidation of the kind allegedly encountered by invoking the jurisdiction of the law enforcement authorities who must be presumed equal to their responsibilities.
So much decided, the question arises as to the next step in the matter. Both sides have expressed a preference for a remand to the local board of education should the action of the Commissioner not be sustained by the court. But the court has concluded that the remand should be to the Commissioner of Education. My own reasons for joining in that direction are the following.
Although, technically speaking, the appeal before us is from the interlocutory decision of the Commissioner, our determination has been to reverse and set aside the expulsions. The initiative for further action in respect of the accused pupils rests with the local school authorities. Three electives are apparent: (a) to have the appellants retried, producing the accusing witnesses for testimony and cross-examination; (b) to abandon the objective of expulsion or suspension for a substantial term, and to deal with the *298 allegedly offending children with lesser discipline-treatment measures not requiring a formal hearing with "due-process" trappings; (c) to drop the matter entirely.
If the decision is to present the case for expulsion anew, I believe the wisest course in this particular exigency is to have the rehearing conducted by the Commissioner de novo pursuant to his authority under N.J.S.A. 18A:6-9. The local board has by now been embroiled in the matter to the point where a desirable appearance of impartiality on its part would be difficult to project. Moreover rehearing by the Commissioner would accelerate a final resolution of the matter.
If, however, the decision of the local authorities, whether in order to relieve the student witnesses of the mental trauma of revealing their identity or for any other reason, is to forego further efforts to effect expulsion or severe terms of suspension, and to deal with the allegedly offending children in other appropriate ways, the matter, in my view, should be returned by the Commissioner to the local school authorities for suitable action in the first instance (the Commissioner, of course, always retains statutory review jurisdiction in respect of any action taken locally). I think it appropriate for the court to express its views on this contingency in light of the fact that at oral argument respondents indicated a probable decision not to produce the student witnesses against their will.
I do not presume to suggest specific suitable alternative action by the local authorities, or whether, indeed, any further action would be indicated at all. That decision is for the local school people. One can conceive the possibility that the local authorities will not decide on further action until after consultation with the guidance and psychological staffs of the school. Such consultations might lead to decisions for temporary home instructions, psychological treatment, the application of moderate disciplinary measures (detention, reprimand, etc.), or any combination of the foregoing *299 and other measures as appropriate ways of handling these cases in the interests of the pupils themselves and the school community at large.[2]
What I feel impelled to say for myself in relation to the legalities is that in the area of handling, disciplining or treating problem pupils at the high school level, generally speaking (the records of at least several of the appellants here involved show they were problem pupils), the concept of formal "due process" hearings as a prerequisite for administrative action short of expulsion or severe suspension is most inappropriate, and, if imported into that sphere would, in my view, be inimical to the welfare, educational and otherwise, not only of the children requiring such handling but of the particular school community as a whole. Cf. Madera v. Board of Education, City of New York, supra.
And it is the local school administration, which lives with such problems, rather than the Commissioner, which should in the first instance exercise the judgment and assume the responsibilities required in these complex and sensitive concerns. Decisions like Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), involve adverse government action against persons who are sui juris and not immature members of a controlled high school community in the course of a process of disciplined education. Such decisions are therefore not apposite in the immediate context. "Constitutional rights" are not involved.
At the oral argument appellants expressly conceded they would have no objection to local board action short of expulsion or extended suspension on procedures such as were employed in this case.
It is thus my opinion that if the local authorities inform the Commissioner that they elect to proceed along the lines of alternative (b), supra, they should be permitted to do so *300 by completing their investigation of the matter, giving the accused pupils another opportunity to explain their position in relation to the assault incident (first informing them that expulsion, etc. is not an objective of the investigation), and then dealing with the matter in such manner as in their best judgment may be appropriate.
KOLOVSKY, J.A.D. (concurring).
The State Commissioner of Education has heretofore recognized that in proceedings before a local board of education which may lead to the expulsion or suspension of a public school student for alleged misconduct  as contrasted with scholastic failure  due process requires, among other things, that the accused student be given at least the names of the witnesses against him and copies of the statements and affidavits of those witnesses. Scher v. Board of Education, West Orange, 1968 School Law Decisions, 92, 95.
In my view, due process also requires that there be added to these minimal rights the right to demand that any such witness appear in person to answer questions. If the witness does not do so, his statement should not and may not be considered or relied on by the board.
By his decision of December 1, 1970 the State Commissioner ruled, despite his previous holding in Scher, that in this case the local board did not have to identify the witnesses against the accused students and could act on the basis of unsigned statements obtained from the witnesses. Justification therefor was found in the determination by the local board, based on the testimony of its investigatory staff, that the witnesses were afraid to testify for fear of physical reprisal.
In my opinion such fears afford no justification in any case for depriving the accused students of their constitutional right to be confronted by and to examine the witnesses against them. An ordered society cannot accept the view that the police and prosecuting authorities will be impotent to prevent and punish unlawful conduct of the kind *301 which the witnesses allegedly fear and on that basis deny the accused students their constitutional right to demand confrontation by the witnesses against them.
Such right is a fundamental aspect of due process, whatever other variant in the form of the hearing may be permitted where a public school student is charged with misconduct. Cf. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir.1961), cert. den. 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).
It must be borne in mind that the action sought to be reviewed here is administrative action by a governmental agency, an agency which has the power to compel the attendance of witnesses. See N.J.S.A. 18A:6-20. Cases upholding expulsions or suspensions from schools or colleges that are not governmental agencies and whose administrators lack such power (see State ex rel. Ingersoll v. Clapp, 81 Mont. 200, 215, 263 P. 433 (Sup. Ct. 1928); People ex rel. Bluett v. Board of Trustees of University of Illinois, 10 Ill. App.2d 207, 134 N.E.2d 635 (App. Ct. 1956)) are therefore of no precedential significance.
Rather, what is of controlling significance is the constitutional rule which mandates that a respondent charged with misconduct in a hearing before a governmental agency be given the opportunity to confront and cross-examine adverse witnesses where the decision of the governmental agency will turn on questions of fact. Goldberg v. Kelly, 397 U.S. 254, 269-270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970); Greene v. McElroy, 360 U.S. 474, 496-497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).
As the United States Supreme Court recently said in applying the rule to the case of a welfare recipient whom the governmental agency had ruled ineligible for further welfare assistance:
In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. E.g., ICC v. Louisville & N.R. Co., 227 *302 U.S. 88, 93-94, 33 S.Ct. 185, 187-188, 57 L.Ed. 431 (1913); Willner v. Committee on Character & Fitness, 373 U.S. 96, 103-104, 83 S.Ct. 1175, 1180-1181, 10 L.Ed.2d 224 (1963). What we said in Greene v. McElroy, 360 U.S. 474, 496-497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959), is particularly pertinent here:
"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment * * *. This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, * * but also in all types of cases where administrative * * * actions were under scrutiny."
Welfare recipients must therefore be given an opportunity to confront and cross-examine the witnesses relied on by the department. [(Goldberg v. Kelly, supra, 397 U.S. at 269-270, 90 S.Ct. at 1021); emphasis added].
My brother Conford suggests that such right of confrontation does not exist if the local board should decide that the penalty to be imposed on the accused students for the assaults and batteries with which they are charged is less than "expulsion or severe term of suspension."
I cannot agree. The constitutional rights of the accused students may not be dissipated by a decision by the local board in advance of a hearing that the penalty will not be "expulsion or a severe term of suspension." Moreover, it is evident that any suspension beyond the preliminary period of suspension which, under N.J.S.A. 18A:37-4, a principal may lawfully impose without a hearing, is a "severe term of suspension."
Further, I see no justification for the suggestion that the State Commissioner may, instead of hearing and deciding the charges himself, return the matter "to the local school authorities for suitable action in the first instance"
*303 [i]f, * * *, the decision of the local authorities, whether in order to relieve the student witnesses of the mental trauma of revealing their identity or for any other reason, is to forego further efforts to effect expulsion or severe terms of suspension, and to deal with the alleged offending children in other appropriate ways * * *.
The suggestion envisions that the only evidence to be offered is that heretofore offered to establish that the accused students had committed assaults and batteries, the written statements of unidentified student witnesses. Those statements are hearsay.
Under settled rules of administrative law, such hearsay, standing alone and absent other legally competent evidence, would afford no legal basis for a finding or determination by either the local board or the State Commissioner that the students had committed the acts with which they are charged  and this irrespective of the penalty to be imposed if the misconduct charged is proven. Gilligan v. International Paper Co., 24 N.J. 230, 236 (1957); Mazza v. Cavicchia, 15 N.J. 498, 509 (1954); Andricsak v. National Fireproofing Corp., 3 N.J. 466, 471 (1950); D'Amico v. Blanck, 85 N.J. Super. 297, 303 (App. Div. 1964), certif. denied 43 N.J. 448 (1964); Friese v. Nagle Packing Co., 110 N.J.L. 588, 589 (E. & A. 1933); Helminsky v. Ford Motor Co., 111 N.J.L. 369, 373 (E. & A. 1933); Annotation, "Administrative Law  Hearsay Evidence," 36 A.L.R. 3d 12, 43 (1971).
The Commissioner's decision of December 1, 1970 (which had approved the procedures adopted by the local board) is the only decision from which the appeal before us was taken  a decision which we now reverse.
Appeals from the orders entered by the local board, after separate hearings, expelling the appellants from school are pending undetermined before the Commissioner. The Commissioner is now in a position to and should proceed to hear and determine those appeals under the power granted by N.J.S.A. 18A:6-9. Such determinations will embrace all *304 issues, including that of the alleged guilt of the students and the penalties to be imposed if they are found guilty.
The history of this litigation, the controversy which it has engendered at the local level and the desirability of a speedy resolution of the charges and issues presented all militate against our granting the request made by the parties hereto that, in the event we did not affirm the Commissioner's decision of December 1, 1970, we remand the cases to the local board of education for further proceedings rather than call on the Commissioner to proceed with the appeals.
Now that the Commissioner has our ruling as to the basic issue presented, he should proceed to hear and determine the appeals promptly.
CARTON, J.A.D. (concurring):
The hearing on the remand to the Commissioner should be in accordance with the legislative mandate that the Commissioner shall "hear and determine all disputes and controversies arising out of the school law." N.J.S.A. 18A:6-9. The statute contemplates a full review of the evidence and an independent determination of all issues including determination of guilt and assessment of penalties. See In re Masiello, 25 N.J. 590 (1958), and In re Fulcomer, 93 N.J. Super. 404 (App. Div. 1967). This "judicial type" hearing requires that witnesses against the accused students be produced and be subjected to cross-examination. The accused students should, of course, have the right to testify and produce witnesses on their behalf.
No useful purpose would be served, and much harm may unnecessarily result, if upon the remand, the Commissioner is required again to refer any part of this controversy to, and await action by, the local board. Such a piecemeal approach would serve only to prolong an already overly lengthy proceeding. More important, under the circumstances present in this case, it could hardly fail to revive the community *305 strife which commonly accompanies such controversies. Cf. In re Fulcomer, supra.
I concur generally with the view expressed by Judge Kolovsky that in a disciplinary proceeding such as this which may result in expulsion, due process requires that the accused student be afforded an opportunity to confront and cross-examine adverse witnesses. However, I am concerned that our recognition of that right may be construed to mean that such a full-dress hearing is a necessary ingredient of procedural due process at the local board level or that our decision be interpreted to lay down the requirements of all such proceedings conducted at that level.
I would hold only that any proceeding conducted by the local board must comply with the minimum requirements set forth in Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir.1961), cert. den. 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). The board should not be compelled, and due process does not require, the in-person production of adverse witnesses and the right of cross-examination at the local board hearing. Although cross-examination is a valuable method of developing the entire factual situation in a given case, it must be borne in mind that the proceeding is an administrative one conducted and controlled by boards of nine lay citizens ordinarily unfamiliar with legal procedures.
The courts cannot envision the whole range of situations which might arise in this administrative area. On the other hand, the Commissioner has an expertise in this field and by reason thereof is in an excellent position to develop and formulate workable and comprehensive procedures. Consequently, we should leave to his office the responsibility of determining the specific format of the hearings and the safeguards required at the board level in cases of this kind, subject of course to the fundamental requirements set forth in Dixon.
It may be pointed out that the Commissioner, in the exercise of his broad supervisory powers, may, where it appears *306 desirable, grant preliminary or injunctive relief to preserve the rights of any party pending a decision by the local board. Furthermore, in the event either party feels aggrieved by the outcome of the hearing at the local level, the exercise of his right to appeal automatically brings the matter before the Commissioner for an independent hearing and determination by him. Compliance with every fundamental requirement of due process can thus be assured without loss of efficiency  the goal which the administrative process in the educational system seeks to attain  and without unnecessary disruption in the operation of that system.
NOTES
[1] One need not determine whether the Administrative Procedure Act's mandate for cross-examination in contested cases, N.J.S.A. 52:14B-10(a), is without application here because the local board is not a state agency or is an agency whose primary responsibility is the management of an educational program and the dispute relates to the "internal affairs" of that program. N.J.S.A. 52:14B-2(a).
[2] Consider the broad authority vested in the principal alone to suspend under N.J.S.A. 18A:37-4 and the liability of misbehaving pupils to "punishment", apart from suspension and expulsion, under N.J.S.A. 18A:37-2.