155 N.J. Super. 78 (1977)
382 A.2d 393
EUGENE GARROW, M.D., PLAINTIFF-APPELLANT,
v.
ELIZABETH GENERAL HOSPITAL AND DISPENSARY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1977.
Decided December 27, 1977.
*82 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Harold J. Ruvoldt, Jr. argued the cause for appellant (Messrs. Ruvoldt & Ruvoldt, attorneys).
Mr. Peter A. Somers argued the cause for respondent (Messrs. Lindabury, McCormick & Estabrook, a professional corporation).
The opinion of the court was delivered by PRESSLER, J.A.D.
We are here asked to reconsider our holding in Sussman v. Overlook Hospital Assn., 95 N.J. Super. 418 (App. Div. 1967), regarding the procedural scope of the fair hearing which a private hospital is required to afford a physician before it may refuse him a staff appointment. More specifically, we are asked to reconsider the conclusion we there reached that the physician is not entitled to representation by counsel at any stage of presentation of his case to the hospital authorities. We are also here asked to define the extent to which, if at all, the physician is entitled to prehearing discovery. We are satisfied that our reappraisal of our earlier holding is required by the development of the law in the decade since Sussman was decided both in respect of the status of private hospitals and in respect of the expansion of the right to counsel in a variety of noncriminal matters.
The questions here presented arise in an undisputed factual context. Plaintiff Eugene Garrow is a licensed physician of both this State and New York. A Diplomate of the American Board of Surgery, his subspecialty in the surgical area is pediatric surgery. In November 1974 he applied for appointment to the staff of defendant Elizabeth General Hospital (hospital) as a pediatric surgeon. The hospital characterizes itself as an "open" hospital. That is *83 to say, it holds itself ready to accord staff privileges to any competent and qualified applicant. Compare this status with that of hospitals, typified by defendant hospital in Guerrero v. Burlington Cty. Memorial Hosp., 70 N.J. 344 (1976), which limit their staffs by reason of their judgment as to the requirements of the public interest.
Plaintiff's application indicates his prima facie impressive credentials. His training included a tour as chief resident in surgery both at Montefiore Hospital in New York City and at Children's Hospital in Detroit, Michigan. He was a Fellow of the American Academy of Pediatrics, Surgical Section, of the American Pediatric Surgical Association of the American College of Surgeons and of the New York Society for Pediatric Surgery. He was then serving as Director of Pediatric Surgery at Jersey City Medical Center and its affiliate, Margaret Hague Hospital, and attended at Christ Hospital in Jersey City and Clara Maas Hospital in Belleville. Since 1965 he had served as an Associate Clinical Professor at the New Jersey College of Medicine and had also published several articles in leading medical journals on his sub-specialty.
Initial consideration of plaintiff's application was delayed for several months because of his own request that it be held in abeyance. It thereafter proceeded in a relatively unexceptional manner through the various hospital committees and departments in accordance with the bylaws of the medical staff of the Hospital. By November 1975 the Medical Staff Executive Committee had approved the favorable recommendation of the Credentials and Eligibility Committee despite the absence of a recommendation from the Department of Surgery.[1] Before, however, final action was *84 taken on those favorable recommendations, the application was referred back to these Committees for reconsideration because of the hospital's receipt of additional information concerning plaintiff. That reconsideration resulted in a recommendation that the application be disapproved, and that recommendation was next considered by the Medical Organization Committee, whose responsibility it was to make the final recommendation to the Board of Trustees. The Medical Organization Committee's private deliberation resulted in a recommendation of disapproval, and the specific and detailed reasons therefor were memorialized in its meeting minutes,[2] ultimately furnished to plaintiff. Notice to plaintiff of the adverse recommendation by the Medical Organization Committee was accompanied by its advisory that he had the right to a hearing before the Board of Trustees pursuant to the bylaws and the further advisory as to the date by which he would be required to request such a hearing. The hearing was scheduled for May 21, 1976, but has not to this date taken place by reason of the intervention of this action, which was brought by plaintiff for the purpose of securing the procedural rights in respect of the hearing to which he regards himself entitled.
The complaint here filed and its accompanying order to show cause sought relief only from the hospital's refusal to accord plaintiff a pre-hearing opportunity "to examine all of the documents in [its] possession which are material to his application for membership." The hospital responded by a cross-motion seeking dismissal of the complaint on a variety of procedural grounds, including failure to exhaust administrative remedies, violation of the entire controversy doctrine and prematurity. By the time the parties' applications *85 were heard, however, two additional issues had been added to the controversy by consent: first, the hospital's right to exclude counsel from the scheduled hearing, and second, the right of the hospital's Board of Trustees to delegate the hearing function to a committee of its members for report and recommendation. The merits of these issues were not, however, reached below, the trial judge having concluded, and in our view erroneously so, that plaintiff's action was premature.
In our judgment the action was maintainable. There is no longer any question in this jurisdiction that a private hospital must accord a physician a hearing before it can reject his application for admission. The judicial function is, moreover, limited to a determination, based on a review of the record of that hearing, as to whether the hospital's decision "is supported by substantial credible evidence and is neither arbitrary nor capricious." Guerrero v. Burlington Cty. Memorial Hosp., supra, 70 N.J. at 356, 359 (1976). Thus the hearing is a critical event in the physician's ultimate challenge to the hospital's adverse action. Its virtually dispositive procedural consequences and its potentially dispositive substantive consequences demand that it be conducted with scrupulous fairness. Predetermined rules governing the conduct of the hearing which apparently have the capacity of substantially impinging upon the required minimum parameters of procedural fairness should clearly be subject to challenge without first requiring the physician to submit himself to a process whose procedural defects may be so grave as to affect his substantial rights. The offer by a hospital of an inadequate hearing is, in our view, no less actionable than its refusal to offer a hearing at all. We do not mean to suggest that every procedural disagreement between physician and hospital regarding the conduct of a scheduled hearing merits pre-hearing judicial intervention. We are, however, satisfied that such disagreements which directly implicate traditional concepts of fundamental procedural due process do warrant such intervention. And we *86 are further persuaded that the questions here raised regarding the right to counsel and the right to pre-hearing discovery are of that magnitude. We, therefore, address the merits of this dispute.[3]
With respect to the right to counsel issue, we believe that the time has come for us to depart from our holding in Sussman v. Overlook Hospital Assn., supra. We there said that "it is not essential that plaintiffs be afforded the right to confront and cross-examine witnesses or to be represented by counsel in the presentation of their case. It is within the discretion of the Board of Trustees as to whether counsel may attend the hearing and participate in the proceedings." Our reasons for then so concluding were based on our appreciation of the fact that hospital boards of trustees, being neither courts nor duly constituted administrative agencies would lack the capacity, the experience, the procedural mechanisms and the resources of time, expertise and money necessary to act as a quasi-judicial body. It seemed then, ten years ago, that the burden the hospital would face in conducting that kind of hearing was disproportionate to any increased benefit the physician would thereby obtain. His interests, it then seemed, could be adequately protected by the rather vaguely defined "fair hearing" we then envisioned, where a physician could present his own witnesses but not confront adverse witnesses, and where the hospital's attorney might be present to advise and assist but not the physician's. Sussman, however, must be placed in historical context. It was decided only several years after the landmark opinion in Greisman v. Newcomb Hosp., 40 N.J. 389 (1963), which first subjected the admissions decisions of private hospitals in this State to judicial review at all and was indeed one of the first decisions rendered in this *87 country reaching that conclusion.[4] Accordingly, we initially proceeded cautiously in further defining the scope of the physicians' admissions rights, both substantively and procedurally, and in implementing the relationship between the hospital's discretionary actions and the corrective power of the court in respect thereof. We must, however, continue to respond to the demands of current realities dominating the delivery of health care services.
At the outset, we repeat the predicates upon which the holding in Greisman was based. As Justice Jacobs there concluded, "hospitals are operated not for private ends but for the benefit of the public, and * * * their existence is for the purpose of faithfully furnishing facilities to the members of the medical profession in aid of their service to the public." 40 N.J. at 397-398. This proposition proceeded, of course, from the recognition that doctors need hospitals in which to practice and, accordingly, that the "privilege" of hospital admission is ordinarily a necessary adjunct of the right to practice at all; that patients requiring hospital care ought to be reasonably accommodated in having doctors of their choice attend them, and that hospitals, although privately organized, are nevertheless public agencies in significant particulars, namely in their function, in their financing and in their virtually monopolistic character. Thus, while hospitals were accorded and continue to be accorded substantial discretion in making their admission decisions, nevertheless that discretion, because it is "deeply imbedded *88 in public aspects," must be "exercised reasonably and for the public good." 40 N.J. at 402. That qualification on the discretionary power must, of course, be understood to mean that rejection of an admission application must be based on reasons legitimately related to the hospital's capacity to properly serve the health needs of the community and not motivated either by considerations of the self-interest of the doctors already admitted or by any other arbitrary or discriminatory consideration. A corollary of this limitation of discretion is the obligation of the hospital to give and the right of the physician to receive a specific statement of reasons for a proposed rejection and the opportunity of the physician to be heard if he chooses to challenge that statement. So we held in Sussman, concluding, however, that the opportunity to be heard could be adequately met by a hearing held without legal representation.
The significance of the hearing, both procedurally and substantially, was thereafter accorded new dimension by our Supreme Court in Guerrero v. Burlington Cty. Memorial Hosp., supra. Guerrero not only reaffirmed the principle that "the power to exclude must be reasonably and lawfully exercised in furtherance of the interests of both the public and the medical profession." 70 N.J. at 358. It also demanded, as we have heretofore indicated, that the decision to exclude be based upon substantial credible evidence supporting a legally cognizable reason for exclusion, it being the express intention of the court to apply to the determination of the private hospital precisely the same standard of review applicable to governmental administrative agencies. 70 N.J. at 356. That standard of review affords the hospital a great measure of insulation from successful attack. But it concomitantly imposes upon the hospital a significantly greater burden in respect of the nature of the hearing it is required to afford. In our judgment, the review standard of "substantial credible evidence" cannot but imply that there will first have been a full opportunity for the adducing of favorable evidence, the challenge to adverse evidence and the testing *89 of the credibility, relevance and probative value of evidence. This is not a standard of review which is susceptible of application to decisions reached by means of informal discussions, private interviews, reliance on undisclosed sources, unilateral investigations and the like. And if what is accordingly being reviewed is a record of the marshalling, presentation and testing of facts, then we are speaking in terms of the special and unique skills and training of the lawyer, the benefit of which neither the physician, the hospital nor the reviewing court should be required to forego. The point is that if the repository for the basic factfinding function is to be the hospital itself rather than the court,[5] then it is at the hospital hearing level that counsel must be initially permitted. In our view, it makes no difference whether the physician's right to a hearing derives from the Greisman concept of the public trust and fiduciary obligation imposed on a private hospital or from the consequences of state action deemed to be implicated in respect of hospitals publically funded or receiving financial assistance under the Hill-Burton Act, 42 U.S.C.A. § 291 et seq.[6] See, e.g., Sosa v. Val Verde Memorial Hosp. Bd. of Mgrs., 437 F.2d 173, 174 (5 Cir.1971); Sams v. Ohio Valley Gen. Hosp. Ass'n, 413 F.2d 826, 828 (4 Cir.1969). And see Walsky v. Pascack Valley Hosp., 145 N.J. Super. 393, 407-408 (Ch. Div. 1976). In either event, procedural due process in the conduct of the hearing is required, and we regard the impact of the substantial credible evidence rule of review on the notion of a fair hearing to leave little doubt as to the right to counsel at the mandated hospital hearings.
*90 We are further persuaded that the right to counsel at the hearing is compelled by reason of the nature of the physician's interest in hospital admission. Traditional distinctions between rights and privileges are not here useful and were effectively abandoned in Greisman, supra. As Guerrero also points out:
It is readily apparent that staff privileges for a member of the medical profession are essential to a viable medical practice. This is especially true as to surgeons. Unlike other types of physicians, surgeons must have access to a hospital operating room or they are precluded from practicing the specialty for which they have been trained. [70 N.J. at 355]
State control over the licensing, operation, construction and expansion of hospital facilities imposed by the Health Care Facilities Planning Act of 1971, N.J.S.A. 26:2H-1 et seq. has, at least at present, intensified the staff admission problem. Cf. Walsky v. Pascack Valley Hosp., supra. We appreciate that expulsion by a hospital of a physician already admitted, or the hospital's failure to renew an appointment theretofore made, may have an appreciably greater adverse impact on his professional future than a refusal to admit him in the first instance. But that greater impact should not detract either from the significant interest the physician has in gaining admittance or from the significant adverse impact denial has, both in terms of his present ability to practice medicine and the effect which a denial will have on future applications for admission. The difference in impact, in our view, does not justify a lesser requirement for procedural due process in the admission hearing. We furthermore perceive an anomaly in, for example, affording counsel when a temporary suspension of driving privileges is at stake, Rodriguez v. Rosenblatt, 58 N.J. 281 (1971); cf. In re Arndt, 67 N.J. 432 (1975), and of affording a quasi-judicial hearing participated in by counsel when continued school attendance is at stake, Tibbs v. Franklin Tp. Bd. of Ed., 114 N.J. Super. 287 (App. Div. 1971), aff'd 59 N.J. 506 (1971), but leaving a physician *91 on his own at a factfinding hearing the outcome of which will seriously affect his ability to practice his profession.
We are also satisfied that we will not be imposing an undue practical burden on the hospital by permitting the physician to be represented by counsel should he so desire. As a simple empirical proposition we note first that many hospitals apparently routinely do permit representation by counsel at hearings involving both admission and termination decisions. See Walsky v. Pascack Valley Hosp., supra. And see Duffield v. Memorial Hosp. Ass'n of Charleston, 361 F. Supp. 398 (S.D.W. Va. 1973); Schooler v. Navarro Cty. Memorial Hosp., 375 F. Supp. 841 (N.D. Tex. 1973); Hoberman v. Lock Haven Hosp., 377 F. Supp. 1178 (M.D. Pa 1974); Citta v. Delaware Valley Hosp., 313 F. Supp. 301 (E.D. Pa. 1970); Campbell v. St. Mary's Hosp., 252 N.W.2d 581 (Minn. Sup. Ct. 1977); Application of Shiffman, 35 A.D. 709, 314 N.Y.S.2d 823 (App. Div. 1970); Theissen v. Watonga Municipal Hosp. Bd., 550 P.2d 938 (Okl. Sup. Ct. 1976).[7] We may also assume, in light of the constantly increasing medical-legal complexities, that hospitals are themselves continuously advised by counsel in all areas of hospital administration having legal implications, including the critical processing stages of admission applications. Certainly counsel will be available to hospital hearing committees to assist in the proper implementation of their hearing responsibilities. If lay boards of adjustment, planning boards and local boards of education can operate in this manner, we are satisfied that hospital boards can too.
As to the two remaining claims of plaintiff, the right to pre-hearing discovery and the right to a hearing before the *92 full Board of Trustees, we find considerable merit in the first and none in the second. The discovery problem is simplified by the hospital's concession at oral argument that it intends at the hearing to rely only on such information as it is willing to fully disclose to plaintiff and only upon such witnesses as will appear before the Committee. The hospital's argument is only that it should not be required to disclose those portions of its files in advance of the hearing, undertaking to grant a continuance of the hearing if that course of action should then seem warranted. Any inconvenience, however, which the hospital may suffer by reason of a pre-hearing disclosure is clearly outweighed both by the procedural importance to plaintiff of being able to prepare his response in advance of the hearing and by the extent to which pre-hearing disclosure may expedite the proceedings themselves. See, e.g., Duffield v. Memorial Hosp. Ass'n of Charleston, supra; Christhilf v. Annapolis Emergency Hosp. Ass'n Inc., 496 F.2d 174 (4 Cir.1974); Suckle v. Madison General Hosp., 362 F. Supp. 1196 (W.D. Wis. 1973), aff'd 499 F.2d 1364 (7 Cir.1974). The hospital should now make at least an initial decision as to the information on which it will rely and make such of that information as it has in its possession available to plaintiff forthwith.
As to plaintiff's argument that he is entitled to a hearing by the full Board of Trustees, we need merely point out that delegation of the hearing and recommendation function is a routine and unexceptionable technique employed by administrative agencies and was, in fact, the procedure followed in Guerrero. As long as the Board of Trustees retains the final power of decision we see no impediment to its delegation of the hearing to a committee of its members.
We reverse and remand for entry of judgment consistent herewith.
NOTES
[1] The Department of Surgery had apparently recommended denial of the application on the ground that the community served by the hospital already had adequate coverage for pediatric surgery. That recommendation was given no weight by the Medical Organization Committee, which reviewed the ultimate Medical Staff Committee recommendation, on the ground of its irrelevance "since the staff is `open' and the bylaws of the medical staff currently make no provision for closing any department or division."
[2] The reasons essentially were based on apparent misrepresentations made by plaintiff in his application regarding other of his hospital affiliations and questions raised by doctors at other hospitals regarding plaintiff's "clinical judgment."
[3] Neither party confined himself on this appeal to the procedural question deemed dispositive below but rather briefed and argued the merits of the substantive questions, which both agree require no further factual presentation.
[4] Only a small minority of sister jurisdictions are in accord with the Greisman holding. See Willis v. Santa Ana Community Hosp. Ass'n, 58 Cal.2d 806, 26 Cal. Rptr. 640, 376 P.2d 568 (Sup. Ct. 1962); Bricker v. Sceva Speare Memorial Hosp., 111 N.H. 276, 281 A.2d 589 (Sup. Ct. 1971); Davidson v. Youngstown Hosp. Ass'n, 19 Ohio App.2d 246, 250 N.E.2d 892 (App. Ct. 1969); Woodard v. Porter Hosp., Inc., 125 Vt. 419, 217 A.2d 37 (Sup. Ct. 1966); Silver v. Castle Memorial Hosp., 53 Haw. 475, 497 P.2d 564 (Sup. Ct. 1972); Peterson v. Tucson General Hosp., Inc., 114 Ariz. 66, 559 P.2d 186 (Ct. App. 1976).
[5] Compare, for example, the judicial factfinding as to the reasonableness of a hospital decision to close admissions undertaken in Davis v. Morristown Memorial Hosp., 106 N.J. Super. 33 (Ch. Div. 1969), with the rationale of Guerrero.
[6] There is nothing in the record indicating whether defendant hospital has received Hill-Burton funds.
[7] We are aware of, but for the reasons we have herein set forth disagree with, decisions of sister states finding no right to counsel. See, e.g., Silver v. Castle Memorial Hosp., 53 Haw. 475, 497 P.2d 564 (Sup. Ct. 1972); Anton v. San Antonio Community Hosp., 55 Cal. App.3d 212, 127 Cal. Rptr. 394 (D. App. Ct. 1976).