604 A.2d 294

**A. Reid ALLISON, Jr., M.D.**

v.

**CENTRE COMMUNITY HOSPITAL.**

**Appeal of CENTRE COMMUNITY HOSPITAL.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Feb. 14, 1992.

Justin H. McCarthy II, for appellant.

Paul H. Titus, for appellee.

Before CRAIG, President Judge, DOYLE, J. (P.), and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Centre Community Hospital (the Hospital) appeals the decision of the Court of Common Pleas of Centre County which determined that the Hospital is a quasi-public institution, thus subject to judicial review of its decision to revoke the staff privileges of Dr. A. Reid Allison, Jr. (Dr. Allison).

On or about February 17, 1988, Dr. Allison was notified by the Medical Staff Executive Committee that it had elected to revoke his medical staff privileges. (R.R. 144a.) Dr. Allison requested a hearing before the Ad Hoc Hearing Committee and hearings were held on March 21, 1988 and March 24, 1988. The Ad Hoc Hearing Committee unanimously agreed to support the decision of the Executive Committee. (R.R. 145a.) Dr. Allison thereafter appealed the decision to the Appellate Review Committee, which held a meeting on the matter on May 18, 1988. The Appellate Review Committee referred the matter back to the Executive Committee for further hearing. On May 22, 1989, a hearing was held before the Ad Hoc Hearing Committee. The Ad Hoc Hearing Committee again recommended that Dr. Allison's staff privileges be revoked. On December 5, 1989, the Appellate Review Committee recommended revocation of Dr. Allison's privileges effective December 14, 1989. (R.R. 131a–132a.)

Thereafter, Dr. Allison filed a complaint in equity in the Court of Common Pleas of Centre County, seeking to enjoin the Hospital's action. A preliminary injunction was issued on December 14, 1989. On December 19, 1989 a hearing was held before the trial court. By agreement of the parties, the trial court issued an order on that date which dissolved the preliminary injunction and scheduled a hearing on Dr. Allison's request for a permanent injunction. The hearing on the permanent injunction was held on January 16, 1990 at which the parties presented evidence limited to the question of whether the Hospital is a private or

quasi-public institution. With the agreement of the parties, the trial court continued the case pending its decision on the quasi-public issue. By order dated February 9, 1990, the trial court ruled that Centre Community Hospital is a quasi-public hospital. Thereafter, the Hospital petitioned the trial court to amend its order so as to permit an interlocutory appeal, which was done by order dated July 25, 1990.

Upon appeal to the Commonwealth Court and after argument before a panel of judges, 139 Pa.Cmwlth. 665, 589 A.2d 1193, this court remanded the case to the trial court for preparation of an opinion in support of its February 9, 1990 order. The trial court filed an opinion on May 31, 1991. This case has returned to us for a decision on the merits.

The term "quasi-public hospital" first appeared, in *dicta*, in *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974), wherein a physician challenged regulations of a public teaching hospital which denied him the right to use certain hospital facilities. The Supreme Court affirmed the trial court's denial of the physician's requested injunction and determined that the hospital's regulations did not violate due process, equal protection or the right of a patient to be treated by the physician of his choice. The Supreme Court discussed the differences in a private versus a public hospital, and stated:

> Under traditional classifications, a hospital has been considered either strictly public or strictly private. This formulation was expressed by the Supreme Court of Vermont thusly:
>
> "[A] public hospital is an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state. A private hospital is founded and maintained by private persons or a corporation, a state or municipality having no voice in the management or control of its property or the formulation of rules for its government...."

*Woodard v. Porter Hospital, Inc.,* 125 Vt. 419, 422, 217 A.2d 37, 39 (1966).

Following the decision in *Burton v. Wilmington Parking Authority,*[1] supra, however, the rigid polarity in this classification has begun to erode as courts increasingly recognize a third category which may be termed "quasi-public". See, *Silver v. Castle Memorial Hospital,* [53] Haw. [475 & 563], 497 P.2d 564 (1972). Fitting this label are hospitals which, though essentially private under the traditional classification, are marked by either one of two sorts of public characteristics. One of these two varieties is a hospital which receives funds in large measure from public sources and through public solicitation, receives tax benefits by reason of its nonprofit and nonprivate character, and holds a virtual monopoly in the area it serves. *Silver v. Castle Memorial Hospital,* supra; *Greisman v. Newcomb Hospital,* 40 N.J. 389, 192 A.2d 817 (1963); *Sussman v. Overlook Hospital Assoc.,* 95 N.J.Super. 418, 231 A.2d 389 (1967); *Woodard v. Porter Hospital, Inc.,* supra. The other type of "quasi-public" hospital is one which receives construction funds from the federal government and participates generally in the benefits available under the Hill–Burton Act, 42 U.S.C. § 291 (1965). *Sams v. Ohio Valley General Hospital Assoc.,* 413 F.2d 826 (4th Cir.1969); *Eaton v. Grubbs,* 329 F.2d 710 (4th Cir.1964), rejecting the earlier holding of the same court in *Eaton v. Board of Managers, etc.,* 261 F.2d 521 (4th Cir.1958), cert. den. 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934; *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir.1963), cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659; *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa.1970). As the cited cases indicate, this third category of hospital has been held to be sufficiently public in nature so that the "state action" doctrine applies. Thus the actions of such hospitals are subject to judicial review with respect to charges of violation of the Fourteenth Amendment. We think

1. 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

that the trend set by the above decisions is a salutary one. 453 Pa. at 70–71, 311 A.2d at 639–640. (Citations omitted.) (Footnote added.)

Thereafter, in *Miller v. Indiana Hospital*, 277 Pa.Superior Ct. 370, 419 A.2d 1191 (1980), the Superior Court, although recognizing that the so-called test for a quasi-public hospital was set forth in dicta by the Supreme Court in *Adler*, proceeded to apply the three-part test; namely, whether the hospital (1) receives tax benefits, (2) is funded mainly from public sources, and (3) holds a monopoly in the area it serves, to determine whether Indiana Hospital was a quasi-public hospital. The Superior Court stated that it did not believe that the second test for such a determination, i.e., whether the hospital receives construction funds from the federal Hill–Burton Act,[2] would be applied by the Supreme Court if faced with the question, and it rejected that test. Upon application of the three-part test, the Superior Court determined that Indiana Hospital is a private hospital. Accordingly, the Superior Court determined that the hospital's revocation of a physician's staff privileges did not constitute state action and did not call into play the protections of the Federal Constitution. Subsequently, in *Rosenberg v. Holy Redeemer Hospital*, 351 Pa.Superior Ct. 399, 506 A.2d 408 (1986), *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1986), the Superior Court adopted the trial court's opinion, in a case in which the trial court had applied the three-part test and had determined that Holy Redeemer Hospital is a private hospital. The Superior Court held that the substance of a private hospital's staffing decision is not subject to judicial review, but that a court may only review whether the hospital met its procedural requirements in making its decision.

The trial court in the present case used the three-part test in its determination that the Hospital is quasi-public. Before us, the Hospital argues that the private/quasi-public dichotomy is no longer viable because of the federal and state laws which require all hospitals, private and public, to

2.  42 U.S.C. § 291.

practice fair hearing and appeal procedures when revoking staff privileges. Because the procedural protections are in place, courts should review, in all instances, whether or not the proper procedures were followed and thereby refrain from substituting judicial discretion for that of a hospital's administrative body. Such a course would allow a more uniform application of judicial review and would avoid the dangers which are inherent in a policy which permits judicial second-guessing of a hospital's disciplinary action.

The federal Health Care Quality Improvement Act of 1986 (Federal Act), 42 U.S.C.S. §§ 11101–11152, was enacted for the following purpose: [3]

The Congress finds the following:

(1) The increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.

(2) There is a national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance.

(3) This nationwide problem can be remedied through effective professional peer review.

(4) The threat of private money damage liability under Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review.

(5) There is an overriding national need to provide incentive and protection for physicians engaging in effective professional peer review.

42 U.S.C.S. § 11101

The Federal Act limits damages recoverable in lawsuits against the persons and entities which conduct professional

---

**3.** The Federal Act is applicable to all states for professional review actions commenced on or after October 14, 1989 unless the state, by legislation, elects that it apply to review actions commenced before that date.

review activities. In exchange for this benefit, the hospital (or other health care facility) must provide fair investigation and hearing procedures. 42 U.S.C.S. § 11112(a) sets forth that a professional review action must be taken (1) in the reasonable belief that such action is in the furtherance of quality health care, (2) after a reasonable effort to obtain the facts, (3) after adequate notice and hearing procedures are afforded to the physician, and (4) in the reasonable belief that the action was warranted by the facts known after a reasonable effort to obtain the facts *and* after meeting the requirement of paragraph (3). Section 11112(a) further states that a professional review action shall be presumed to have met the standards necessary for the Federal Act's protection unless the presumption is rebutted by a preponderance of the evidence. Section 11112 goes on to provide the required elements of adequate notice and hearing procedures.

In Pennsylvania, the requirement for the content of medical staff bylaws, rules and regulations is set forth in 28 Pa.Code § 107.12. That section requires that fair hearing and appellate review mechanisms be provided.[4] This requirement comports with the Federal Act.

Upon consideration of the foregoing, we are constrained to agree with the Hospital that the private/public dichotomy, for purposes of determining the type of judicial review which is applicable, is unnecessary. We note that the Supreme Court has never adopted the concept of "quasi-public" hospital, and that the Superior Court's use of that concept is not binding on us. In light of the Federal Act

**4.** 28 Pa.Code § 107.12 provides, in part:

The medical staff bylaws, rules, and regulations shall provide for at least the following:

.    .    .    .    .

(4) *Appeals.* The bylaws shall provide for the establishment of fair hearing and appellate review mechanisms, which will be available if requested by the practitioner in connection with medical staff recommendations for denial of staff appointments, as well as the denial of reappointments, or the curtailment, suspension, or revocation of privileges. It is recognized that the mechanism for individuals applying for initial medical staff appointments or privileges may differ from that which is applicable to medical staff members.

and state law which apply to all hospitals without differentiation of public versus private, the problems which were to be remedied by that dichotomy, i.e., whether or not the hospital arbitrarily harmed a staff member, are now remedied by those laws.[5] Accordingly, we vacate the trial court's determination that the Hospital is quasi-public and remand for a determination of whether the Hospital complied with federal and state procedural safeguards in revoking Dr. Allison's staff privileges.

## ORDER

AND NOW, this 14th day of February, 1992, the order of the Court of Common Pleas of Centre County, dated February 9, 1990, is vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

5. Rejection of the concept of a quasi-public hospital based on the elements of the three-part test eliminates the substantial risk that all rural hospitals would be determined to be quasi-public while urban hospitals would be labelled private. For instance, the trial court in the present case found that the Hospital holds a monopoly in its area because it is the only hospital within a 25–30 mile radius and most of the patients residing in its area request hospitalization there. A determination of monopoly based on such evidence is questionable at the least (the trial court made no mention of other factors such as price control or the exclusion of competition), and is dangerous, at the most. It is reasonable to expect that an isolated hospital would draw most of its patients from the surrounding area. Such a fact, however, should not lead to that hospital being subject to a greater degree of judicial scrutiny of its staffing decisions.