[No. B143702. Second Dist., Div. One. Dec. 20, 2001.]

GEORGE T. O'BYRNE et al., Plaintiffs and Appellants, v.
SANTA MONICA-UCLA MEDICAL CENTER et al., Defendants and
Respondents.

COUNSEL

The Ronin Law Group and Kevin M. Clarke for Plaintiffs and Appellants.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Adrian J. Guidotti; Greines, Martin, Stein & Richland, Martin Stein and Carolyn Oill for Defendants and Respondents.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Plaintiffs George T. O'Byrne, M.D. and George T. O'Byrne, M.D., Inc. appeal from a summary judgment in favor of defendants Santa Monica Hospital Medical Center, The Regents of the University of California on behalf of Santa Monica-UCLA Medical Center, and Daniel Wohlgelernter, M.D. We affirm.

### STATEMENT OF FACTS[1]

On June 18, 1992, plaintiff George T. O'Byrne, M.D. (plaintiff) submitted to defendant Santa Monica Hospital Medical Center (Medical Center)[2] an application for appointment to the attending staff (Application). By it, he sought privileges in internal medicine and cardiology. The Application, which plaintiff signed, contained an acknowledgment that he had received and read a copy of the attending staff bylaws (Bylaws).

Article XV, paragraph 1(b) of the Bylaws sets forth the grounds for a hearing. These include the denial of requested staff privileges, a reduction in privileges and termination of privileges. If the executive medical board takes any of the preceding actions, notice of the action must be given within 10 days. After notice is given, the physician has 30 days in which to seek a hearing on the matter.

---

[1]On summary judgment, the facts are those shown by the evidentiary materials submitted by the parties. (Code Civ. Proc., § 437c, subd. (b).) Additionally, any evidence on which the parties wish to rely in support of or opposition to the summary judgment motion must appear in their separate statements of undisputed and/or disputed facts. (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368].) If it does not appear there, " '*it does not exist.*' " (*Ibid.*)

[2]The Medical Center is now known as Santa Monica-UCLA Medical Center and is operated by the Regents of the University of California.

After filing his Application, plaintiff was granted temporary privileges. He exercised his privileges in both internal medicine and cardiology as a "covering" physician, providing care to other physicians' patients when the physicians were absent from the Medical Center.

On June 23 and September 21, 1992, plaintiff was notified that he was missing documentation necessary for consideration of his Application. On October 14 and November 4, he was advised that consideration of his Application had been deferred "pending receipt of (1) a properly completed application, (2) an appropriate office address, and (3) documentation substantiating privileges requested."

On April 5, 1993, the Medical Center advised plaintiff that he had been appointed to its provisional staff. He was granted privileges in internal medicine, but the requested privileges in cardiology were denied pending receipt of documentation regarding his training.

During 1992 and 1993, plaintiff periodically inquired at the Medical Staff Office as to when he would be granted the privileges he had requested. Each time, he was told that his request was under consideration and he should be patient. He was not told that his requested cardiology privileges had been formally denied.

In January 1994, plaintiff attempted to clarify the status of his request for the privilege of performing insertions of Swan-Ganz catheters, an invasive procedure. He provided defendant with documentation of his performance of this procedure at another hospital. He was told that his request was being considered.

Plaintiff submitted another Application in May 1994. He requested internal medicine privileges and specifically delineated cardiology privileges. The Medical Center again denied his Application pending receipt of documentation regarding his training. He was requested specifically to provide more detailed information concerning his training in the United Kingdom. He submitted that information in 1995.

Plaintiff thereafter inquired periodically as to whether he could receive the specifically delineated cardiology privileges based upon the additional information he had submitted. He was told his request was under consideration and no action had been taken on it.

On July 2, 1996, plaintiff was advised that he had been reappointed to the Medical Center's active staff through July 2, 1998. He again was being

denied cardiology privileges based on a lack of documentation as to his training. He was not told that his request for specifically delineated cardiology privileges had been denied or that his request had been denied by the executive medical board. He was not given notice of any formal action or advised of a right to a hearing.

Despite the foregoing, plaintiff did, in fact, act as a cardiologist at the Medical Center to the extent of performing noninvasive consulting services. He was listed as a cardiologist in the Medical Center's pictorial directory of medical staff members.

Plaintiff also practiced internal medicine at the Medical Center. He took rotation on the emergency room call panel for internal medicine. Taking part on this panel was significant to him financially.

By letter dated September 27, 1996, plaintiff was informed that the "Executive Medical Board was made aware of an instance when [he] failed to respond to telephone calls placed by the Emergency Department for 8-10 hours." The executive medical board "was very concerned about this matter given [his] documented pattern of not responding to telephone calls in a timely manner." A written response to the letter was requested. Plaintiff responded by letter on December 19, 1996.

Two additional letters were sent to plaintiff, on October 3 and October 29, 1996, from staff committees, regarding concerns about some of the patients plaintiff had seen. Four more similar letters were sent to plaintiff on January 8, 1997. The executive medical board wrote to plaintiff on February 14, 1997. It stated that at a meeting two days earlier, it had been "made aware of seven letters generated by Attending Staff Committees to which [he had] not responded for long periods of time."

On January 12, 1998, Dr. Richard Kennedy, Medical Center chief of staff, wrote to plaintiff concerning a December 9, 1997 meeting he and plaintiff had had with the executive medical board. He notified plaintiff that the board was requiring him to "have and maintain an office with an address and office telephone number," which were to be listed in the telephone book. His name and suite number were to be listed in the lobby of his office building. The board was relieving him of his "duty on the Emergency Department call panel," and he would not be permitted to accept emergency calls for other physicians. He was to complete his rounds within specified hours and respond to calls within a specified period of time. In addition, he was "reminded that [he] may not render cardiology consultations because [he did] not meet the Bylaws requirement that would permit [him] to refer to

[himself] as a specialist. Moreover, [he did] not have clinical privileges in cardiology."

The letter additionally stated that plaintiff's failure to comply with the executive medical board's requirements would "result in the loss of [his] Attending Staff membership and/or privileges." Further, the Board had been advised by its legal counsel that none of its actions provided grounds for a hearing within the meaning of the Bylaws. The following day, plaintiff filed the instant action for breach of written contract, breach of fiduciary duty and intentional interference with the practice of his profession.

Dr. Kennedy wrote to plaintiff again on May 28, 1998. He stated that the executive medical board had been advised that plaintiff had no listing in the telephone book, and his name and suite number were not listed in the lobbies of the buildings where he claimed to have offices. Plaintiff had been observed making rounds after the specified hours. Plaintiff repeatedly and over a period of time had failed to comply with other requirements. Plaintiff's actions left the executive medical board with "no choice but to recommend that [his] Medical staff membership be terminated." However, in view of the action plaintiff had filed against the Medical Center, he would be "permitted to request a Judicial Review Hearing to challenge their decision to remove [him] from the Emergency Department Call Panel and their decision to deny certain clinical privileges because of [his] failure to provide adequate documentation regarding [his] training and experience." Plaintiff resigned from the staff at the Medical Center, however.

Plaintiff is an independent physician who maintains clinical offices in Culver City. In 1998, he had staff privileges at Midway Hospital, West Side Hospital, Century City Hospital, Brotman Medical Center, Washington Medical Center and Vencor. In 1996, he had staff privileges at these facilities plus Granada Hills Hospital, Holy Cross Hospital, Valley Presbyterian Hospital, Valley Hospital and Northridge Hospital, and he had provisional privileges at Daniel Freeman Marina and Daniel Freeman Memorial Hospital.

CONTENTIONS

I

Plaintiff contends the trial court erred in granting defendants' motion for summary judgment, in that triable issues of material fact existed as to his first cause of action for breach of contract.

## II

Plaintiff further contends the trial court erred in granting defendants' motion for summary judgment, in that triable issues of material fact existed as to his second cause of action for breach of fiduciary duty.

## III

Finally, plaintiff asserts the trial court erred in granting defendants' motion for summary judgment, in that triable issues of material fact existed as to his third cause of action for intentional interference with the practice of a profession.

## DISCUSSION

■ We begin our discussion by setting forth the standard of review. Summary judgment properly is granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) To secure summary judgment, a moving defendant may show that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar, supra*, at p. 849.) The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674]; accord, *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

Once the moving defendant has met its burden, the burden shifts to the plaintiff to show that a triable issue of fact exists as to the cause of action or the defense thereto. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 849.) He or she may not rely on the pleadings (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar, supra*, at p. 849), except to the extent they are uncontested by the parties (*Wiler v. Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 626 [157 Cal.Rptr. 248]).

On appeal, this court exercises its independent judgment in determining whether there are no triable issues of material fact and the moving party thus is entitled to judgment as a matter of law. (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at pp. 334-335.) We must uphold the judgment if it is

correct on any ground, regardless of the reasons the trial court gave. (*Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419 [267 Cal.Rptr. 819].)

I

■■ Plaintiff contends the trial court erred in granting defendants' motion for summary judgment, in that triable issues of material fact existed as to his first cause of action for breach of contract. We disagree.

The crucial question here is whether the Bylaws constituted a contract between plaintiff and the Medical Center. Plaintiff's first cause of action for breach of contract was based upon the allegation that the Bylaws constituted a contract between himself and the Medical Center.[3]

The question whether a hospital's bylaws create an enforceable contract was addressed in *Janda v. Madera Community Hosp.* (E.D.Cal. 1998) 16 F.Supp.2d 1181, on which plaintiff relies in support of his contention. The *Janda* court noted that while there is no California case law on this question, a majority of other jurisdictions "have held that hospital bylaws, when approved and adopted by the governing board, are a binding and enforceable contract between the hospital and physicians." (At p. 1184.) These jurisdictions, however, "apply little, if any, contract law analysis" in reaching their conclusions. (*Ibid.*)

The *Janda* court observed that contract law analysis was used by the North Carolina Court of Appeals in reaching this conclusion in *Virmani v. Presbyterian Health Services* (1997) 127 N.C.App. 71 [488 S.E.2d 284]. (*Janda v. Madera Community Hosp., supra*, 16 F.Supp.2d at p. 1184.) In *Virmani*, "the hospital argued that no contract was formed because there was no 'mutual exchange of consideration' given that the hospital was statutorily required to enact bylaws governing the suspension and termination of a physician's privilege to practice in the hospital." (*Janda, supra*, at pp. 1184-1185.) The court " 'acknowledge[d] the general rule that the promise to perform an act which the promisor is already bound to perform cannot constitute consideration to support an enforceable contract. Thus the mere enactment of a set of bylaws pursuant to the statute is a preexisting duty and cannot itself constitute consideration for the formation of a contract.' " (*Id.* at p. 1185.) However, the *Virmani* court concluded, by offering a physician the privilege of

---

[3]In ruling on a summary judgment motion, "[t]he determination whether facts have been adduced . . . which present triable issues of fact is to be made in the light of the pleadings." (*Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768].)

practicing in the hospital, the hospital went beyond its statutory obligation. (*Ibid.*) Once the physician accepts the offer, " 'the physician receives the benefit of being able to treat his patients in the hospital and the hospital receives the benefit of providing care to the physician's patients. . . . [E]ach confers a benefit on the other and these benefits constitute sufficient and legal consideration for the performance of the agreement. . . . If the offer includes a condition that the physician be bound by certain bylaws promulgated by the hospital and the physician accepts the offer, those bylaws become a part of the contract, as there is mutual assent to be bound by the bylaws.' " (*Ibid.*, citation omitted.)

The *Janda* court then contrasted the *Virmani* analysis with that of a case holding the minority view "that hospital bylaws do not create a contract per se between the hospital and its medical staff," *Gianetti v. Norwalk Hosp.* (1989) 211 Conn. 51 [557 A.2d 1249]. (*Janda v. Madera Community Hosp., supra,* 16 F.Supp.2d at p. 1185.) In *Gianetti,* the physician sought to assert a breach of contract claim against the hospital based on the bylaws, claiming that the bylaws were " 'an integral part of the contractual relationship between the hospital and the members of the staff.' " (*Ibid.*) The *Gianetti* court "held that the Norfolk Hospital bylaws, by themselves, did not constitute an enforceable contract between the hospital and the physician because the governing board of the hospital already had a legal duty to adopt" them. (*Ibid.*, italics omitted.) The bylaws "were not bargained for because the bylaws were unilaterally written and adopted by the hospital without any input from the [physician]." (*Ibid.*) The *Gianetti* court added, however, that the bylaws were enforceable and subject to judicial review in the context of the contractual relationship which otherwise existed between the physician and the hospital, in that they were "an integral part" of that contractual relationship. (*Id.* at pp. 1185-1186.)

The *Janda* court noted that although there was a split of authority, a common theme underlay the cases. "The courts acknowledge that the bylaws govern the relationship between the hospital and its medical staff, and each party is required to perform in accordance with the terms of the bylaws. Consequently, an aggrieved physician can enjoin a hospital from contravening the terms and provisions of the bylaws." (*Janda v. Madera Community Hosp., supra,* 16 F.Supp.2d at p. 1186.) The question to be decided was whether, under California law, the aggrieved physician could sue for breach of contract as well. (*Ibid.*)

The court began its analysis by setting forth the elements of a contract under Civil Code section 1550: "(1) parties capable of contracting; (2) their

consent; (3) a lawful object; and (4) sufficient cause or consideration." (*Janda v. Madera Community Hosp., supra,* 16 F.Supp.2d at p. 1186.) The court observed that there was an underlying contractual employment relationship between the physician and the hospital supported by valid consideration: the hospital's promise to employ the physician under the stated terms and conditions, and his promise to work under those conditions. (*Ibid.*) The hospital did not dispute the existence of this contractual relationship. (*Id.* at p. 1187.) The hospital argued, however, that the bylaws did not create an enforceable contract, in that they were not supported by a " 'mutual exchange of consideration.' " (*Ibid.*) The hospital claimed that under California Code of Regulations, title 22, section 70701, the adoption of the bylaws was mandated by the state, and under section 70703, subdivision (b), the physician had a legal duty to abide by the bylaws. (*Janda, supra,* at p. 1187.)

The court observed that section 70703 of title 22 of the California Code of Regulations requires physicians to comply with rules adopted by the hospital's medical staff, not "bylaws adopted by the governing body of the hospital." (*Janda v. Madera Community Hosp., supra,* 16 F.Supp.2d at p. 1187, italics omitted.) In addition, the hospital's bylaws were "more expansive and comprehensive" than those required by section 70701. (*Janda, supra,* at p. 1187.) Thus, the physician's agreement to abide by the bylaws in exchange for his services to the hospital required both him and the hospital "to do that which neither [was] legally bound to do under the California law governing rules for hospital medical staff. This constitute[d] valid consideration." (*Id.* at p. 1188.) Therefore, the court concluded, the physician's "contract require[d] him to abide by the Hospital's Bylaws, which are an integral element of the parties' contractually bargained-for employment relationship. The mutual duties prescribed by the Bylaws are contractually binding on and enforceable by both the Hospital and the physician." (*Ibid.*)

Sections 70701 and 70703 of title 22 of the California Code of Regulations fall within division 5 of that title, dealing with the licensing and certification of health facilities. Section 70701 requires a hospital's governing body to "[a]dopt written bylaws in accordance with legal requirements and its community responsibility." (*Id.,* subd. (a)(1).) It requires that these bylaws have provisions for, inter alia, the appointment and reappointment of medical staff, formal organization of the medical staff with officers and bylaws and self-government by the medical staff. (*Id.,* subd. (a)(1)(B), (D), (F).)

Section 70703 of title 22 of the California Code of Regulations governs the hospital's medical staff. It requires the staff to adopt bylaws "which

provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate. The medical staff shall abide by and establish a means of enforcement of its by-laws." (*Id.*, subd. (b).)[4]

The Bylaws at issue here are the attending staff bylaws. These Bylaws are required by law, and plaintiff was required by law to abide by them under section 70703 of title 22 of the California Code of Regulations.

Whether a set of bylaws constitutes a contract "turns on whether the elements of a contract are present." (*Scott v. Lee* (1962) 208 Cal.App.2d 12, 15 [24 Cal.Rptr. 824].) As noted in *Janda*, a contract requires consideration. (Civ. Code, § 1550, subd. 4; *Janda v. Madera Community Hosp., supra*, 16 F.Supp.2d at p. 1186.)

Consideration is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . ." (Civ. Code, § 1605.) A statutory or legal obligation to perform an act may not constitute consideration for a contract. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 723 [77 Cal.Rptr.2d 1], disapproved on another ground in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Sections 70701 and 70703 of the California Code of Regulations, title 22, required the Medical Center to appoint a medical staff, they required the medical staff to adopt bylaws, and they required the medical staff to abide by those bylaws. Clearly, there was no consideration given for the Bylaws—neither the Medical Center nor plaintiff conferred on the other any more than what was required by law.

*Janda* itself suggested its conclusion would have been different had it been the medical staff bylaws at issue in the case rather than the hospital's governing body's bylaws. The court emphasized that section 70703 of title 22 of the California Code of Regulations requires physicians to comply with rules adopted by the hospital's medical staff, not "bylaws adopted by the governing body of the hospital," at issue in the case before it. (*Janda v. Madera Community Hosp., supra*, 16 F.Supp.2d at p. 1187, italics omitted.)

---

[4]By statute, health care professionals providing medical services within a hospital are required to be members of the medical staff. (Health & Saf. Code, § 1275, subd. (f).)

In addition, the hospital's bylaws were "more expansive and comprehensive" than those required by section 70701. (*Janda, supra,* at p. 1187.) Since the physician's agreement to abide by the governing body's bylaws in exchange for his services to the hospital required both him and the hospital "to do that which neither [was] legally bound to do under the California law governing rules for hospital medical staff," it constituted valid consideration. (*Id.* at p. 1188.)

Plaintiff argues that, as in *Janda,* the Bylaws at issue appear to be "more expansive and comprehensive than the minimum requirements of California law." California Code of Regulations, title 22, section 70703, subdivision (b), requires a hospital's medical staff to adopt bylaws "which provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms *and such other subjects or conditions which the medical staff and governing body deem appropriate.*" (Italics added.) Plaintiff does not explain precisely how the Bylaws are more expansive and comprehensive than those provided for by law, in light of the broad discretion given the medical staff to adopt appropriate bylaws.

Moreover, *Janda* noted that Assembly Bill No. 405 (1997-1998 Reg. Sess.) (Assembly Bill 405) had been introduced on February 20, 1997. (*Janda v. Madera Community Hosp., supra,* 16 F.Supp.2d at p. 1186, fn. 3.) Assembly Bill 405, as introduced, provided that the organized medical staffs of acute care hospitals would develop and adopt medical staff bylaws. Once these bylaws were approved by the hospital's governing body, they would "constitute a binding contract between the health facility, the organized medical staff as a whole, and, to the extent the bylaws impose duties upon or grant rights to them, the individual members of the medical staff." This provision was stricken by amendment in the Assembly on May 19, 1997. The bill ultimately was vetoed by the Governor on September 8, 1997.

■ When interpreting statutes, " ' " " "[t]he court should take into account matters such as context, . . . the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." ' . . ." ' " " (*Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1155 [67 Cal.Rptr.2d 543, 82 A.L.R.5th 781].) The manner in which the Legislature interprets the law may be particularly instructive. (See *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281].) Additionally, in general, "a substantial change in the language of a statute . . . by an amendment indicates an intention to change its meaning." (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 493 [159 Cal.Rptr. 494, 601 P.2d 1030].)

■ Applying the foregoing principles, it appears the Legislature did not believe at the time Assembly Bill 405 was introduced that medical staff bylaws would "constitute a binding contract between the health facility, the organized medical staff as a whole, and, to the extent the bylaws impose duties upon or grant rights to them, the individual members of the medical staff." Further, by deleting that provision of Assembly Bill 405, the Legislature retreated from the notion that such bylaws ought to constitute a binding contract between the health facility and its staff.

Following California contract law in this situation would lead to a result consistent with the legislative intent and public policy considerations evident in the history of Assembly Bill 405. Accordingly, we hold that under California contract law, medical staff bylaws adopted pursuant to California Code of Regulations, title 22, section 70703, subdivision (b), do not in and of themselves constitute a contract between a hospital and a physician on its medical staff. Whether they become incorporated into a separate employment contract between the hospital and the physician is another question. (See, e.g., *Gianetti v. Norwalk Hosp.*, *supra*, 557 A.2d at p. 1255; see also *Janda v. Madera Community Hosp.*, *supra*, 16 F.Supp.2d at p. 1188.) It need not be addressed here, however, in that plaintiff alleged only that the Bylaws constituted the contract between himself and the Medical Center, and he presented evidence of no other contract. Since the Bylaws did not constitute a contract as a matter of law, the trial court properly granted summary judgment as to his breach of contract cause of action. (Code Civ. Proc., § 437c, subds. (c), (o)(2).)

■ Holding that the Bylaws did not constitute a contract does not deprive plaintiff of a remedy for a violation of the Bylaws by the Medical Center. As noted in *Janda*, "an aggrieved physician can enjoin a hospital from contravening the terms and provisions of the bylaws." (*Janda v. Madera Community Hosp.*, *supra*, 16 F.Supp.2d at p. 1186.)

II

■ Plaintiff further contends the trial court erred in granting defendants' motion for summary judgment, in that triable issues of material fact existed as to his second cause of action for breach of fiduciary duty. Again, we disagree.

Plaintiff cites *Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123 [73 Cal.Rptr.2d 695] for the proposition that he has a cause of action against the Medical Center for breach of fiduciary duty. *Hongsathavij* states that "[h]ospital governing body members have fiduciary

duties as directors and under certain circumstances have exposure to personal liability. (See Corp. Code, §§ 309 [corporations, generally], 5231 [nonprofit benefit corporations], 7231 [nonprofit mutual benefit corporations], and 9241 [nonprofit religious corporations].) A hospital itself may be responsible for negligently failing to ensure the competency of its medical staff and the adequacy of medical care rendered to patients at its facility. [Citation.] A hospital has a duty to ensure the competence of the medical staff by appropriately overseeing the peer review process. [Citation.]" (*Hongsathavij, supra,* at p. 1143.)

The foregoing statement was made in the context of determining whether the hospital's governing body or its medical staff has the right to make the final determination as to whether action should be taken against a physician on the hospital's staff. (*Hongsathavij v. Queen of Angels etc. Medical Center, supra,* 62 Cal.App.4th at p. 1143.) The court concluded that since the hospital's governing body has the fiduciary duty to the hospital's shareholders and/or the public, it must be permitted to make the final determination. (*Ibid.*) It did not hold that the hospital's governing body owes a fiduciary duty to a physician on the medical staff.

Other cases cited by plaintiff are similar. *Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253] speaks of the "fiduciary responsibilities imposed on [hospitals and professional] associations because of their '*public service*' functions." (At pp. 553-554, italics added.) *Ascherman v. Saint Francis Memorial Hosp.* (1975) 45 Cal.App.3d 507, 511 [119 Cal.Rptr. 507] echoes *Pinsker.* Another case emphasizes that a "hospital's power to pass on staff membership applications [is] a 'fiduciary [power] to be exercised reasonably and for the *public good.*'" (*Sussman v. Overlook Hospital Ass'n* (1967) 95 N.J.Super. 418 [231 A.2d 389, 391], italics added, overruled on another ground in *Garrow v. Elizabeth Gen. Hospital, etc.* (1977) 155 N.J.Super. 78 [382 A.2d 393, 397].) The fiduciary responsibility is to the *public,* not to an individual physician seeking to obtain or retain a staff position. As noted in *Elam v. College Park Hospital* (1982) 132 Cal.App.3d 332, 346 [183 Cal.Rptr. 156], a hospital has "a direct and independent responsibility *to its patients* of insuring the competency of its medical staff and the quality of medical care provided through the prudent selection, review and continuing evaluation of the physicians granted staff privileges." (Italics added.)

Plaintiff cites no cases holding that a hospital has a fiduciary relationship with its staff members. In general, employment-type relationships are not fiduciary relationships. (*Amid v. Hawthorne Community Medical Group, Inc.*

(1989) 212 Cal.App.3d 1383, 1391 [261 Cal.Rptr. 240].) In the absence of a fiduciary relationship, there can be no breach of fiduciary duty as a matter of law. Summary judgment thus was properly granted as to plaintiff's cause of action for breach of fiduciary duty. (Code Civ. Proc., § 437c, subds. (c), (o)(2).)

### III

Finally, plaintiff asserts the trial court erred in granting defendants' motion for summary judgment, in that triable issues of material fact existed as to his third cause of action for intentional interference with the practice of a profession. There is no merit to the assertion.

Under common law principles, "an action will lie where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. [Citations.] Whether there is justification is determined not by applying precise standards but by balancing, in the light of all the circumstances, the respective importance to society and the parties of protecting the activities interfered with on the one hand and permitting the interference on the other. [Citations.]" (*Willis v. Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568], overruled on another ground in *Cianci v. Superior Court* (1985) 40 Cal.3d 903, 921, 925 [221 Cal.Rptr. 575, 710 P.2d 375].)

In *Willis v. Santa Ana etc. Hospital Assn., supra,* 58 Cal.2d 806, a cause of action was stated where it was "alleged that a physician of the highest qualifications [was] denied access to necessary hospital facilities as the result of a conspiracy designed to restrain competition and deprive him of his practice in order to benefit competing members of the conspiracy." (*Id.* at p. 810.) As noted in *Larez v. Oberti* (1972) 23 Cal.App.3d 217 [100 Cal.Rptr. 57], "[t]he *Willis* case basically is predicated upon allegations of an intentional and malicious conspiracy to deprive the plaintiff of the use of hospital facilities at which he could pursue his medical practice." (At p. 226.) The key was that the defendant's actions deprived the plaintiff "of any opportunity to become employed in [his] field" by excluding him "from all of the hospital staffs in the entire Santa Ana area." (*Id.* at pp. 226-227.)

Here, by contrast, there is no unlawful or wrongful act on the part of defendant. Defendant has taken no action to prevent plaintiff from practicing at any other hospital in the area. There is no evidence that defendant conspired with other hospitals to prevent plaintiff from practicing in them. There is no evidence that defendant defamed plaintiff, causing other hospitals to remove him from their staffs or to refuse to allow him to join their

staffs. Indeed, plaintiff's own evidence establishes that he remained on the staffs of a number of other hospitals at the time he left defendant's staff.

Thus, the question is whether plaintiff presented evidence that the Medical Center intentionally interfered with his right to pursue a lawful business without sufficient justification. (*Willis v. Santa Ana etc. Hospital Assn.*, *supra*, 58 Cal.2d at p. 810.) Plaintiff argues that the Medical Center failed to deal with his Application "in a fair, good faith manner," acting "with complete disregard for [his] rights to apply for privileges at the Hospital on an even playing field and as a result thereof [it has] improperly conspired to intentionally interfere[] with [his] right to practice his profession."

Plaintiff cites no evidence in support of his argument. The evidence shows only that the Medical Center failed to grant plaintiff staff privileges in cardiology when dissatisfied with the documentation he provided as to his qualifications. Despite being told this, it took plaintiff three years to provide the Medical Center with the documentation, which even then was deemed inadequate.

In September 1996, plaintiff was informed that the executive medical board was concerned about a problem with his failing to respond to telephone calls in a timely manner. It took plaintiff three months to respond. During this time period, other concerns regarding plaintiff's work were raised by staff committees. The executive medical board met with plaintiff to discuss its concerns. It notified him of its requirements for him to remain on staff. It also notified him that his failure to comply with these requirements would "result in the loss of [his] Attending Staff membership and/or privileges," and he was not entitled to a hearing on the executive medical board's actions. Plaintiff's response was to file the instant lawsuit.

Thereafter, plaintiff was notified that he had failed to comply with the executive medical board's requirements. This left the board with "no choice but to recommend that [his] Medical staff membership be terminated." He would, however, be permitted to request a hearing to challenge the board's decisions. Plaintiff resigned from the staff at the Medical Center and did not request a hearing.

The foregoing evidence does not support a conclusion that the Medical Center failed to deal with plaintiff's Application "in a fair, good faith manner" and acted "with complete disregard for [his] rights to apply for privileges at the Hospital on an even playing field." There is no evidence of any conspiracy intended to interfere with plaintiff's right to practice his profession. And, as the trial court found, there is no evidence of any actual

interference with plaintiff's right or ability to pursue his profession. Plaintiff simply failed to present any evidence that the Medical Center intentionally interfered with his right to practice his profession. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.) Summary judgment thus was properly granted as to this cause of action. (Code Civ. Proc., § 437c, subds. (c), (o)(2).)

The judgment is affirmed.

Mallano, J., concurred.

**VOGEL (MIRIAM A.), J.**—I concur but write separately for several reasons.

First, most of the facts recited by the majority are irrelevant. What matters is that Dr. O'Byrne applied for staff privileges, acknowledged receipt of a copy of the medical staff bylaws that were adopted to conform to statewide regulations, failed to provide further information requested by the Medical Center, then sued when some of his medical staff privileges were terminated and his application was denied. Dr. O'Byrne's complaint alleged three causes of action—breach of contract (the bylaws), breach of fiduciary duty, and intentional interference with the practice of a profession. These facts are undisputed and I see no reason to recite the four pages of minutia included in the majority opinion. (Maj. opn., *ante,* at pp. 800-803.) As Justice Cardozo put it, a proper statement of facts is one that is "rigidly pared down" to those facts "that are truly essential as opposed to those that are decorative and adventitious." (See Gailor, *Opinions Among Other Things* (1946) 32 A.B.A. J. 443, 497.)

Second, I agree with my colleagues that Dr. O'Byrne failed to establish the existence of a contract, but I would decide the issue on a narrow ground—that medical staff bylaws adopted pursuant to one regulation (Cal. Code Regs., tit. 22, § 70703, subd. (b)) and approved by the hospital pursuant to another (*id.,* § 70701, subd. (a)(8)) do not, without more, create a contract between an attending physician and the hospital. The cases that conclude otherwise are based on different facts—bylaws that go far beyond the bare statutory requirements or a contractual relationship that exists outside the bylaws. (E.g., *Janda v. Madera Community Hosp.* (E.D.Cal. 1998) 16 F.Supp.2d 1181, 1185-1186 [bylaws do not create a contract per se but may become part of an existing contractual relationship]; *Gianetti v. Norwalk Hosp.* (1989) 211 Conn. 51 [557 A.2d 1249, 1253] [bylaws by themselves do not constitute a contract between doctor and hospital]; *Virmani v. Presbyterian Health Services* (1997) 127 N.C.App. 71 [488 S.E.2d 284, 288] [bylaws were an "integral part" of existing contract].)

Third, since attending physicians are not employees of the hospital, and since the hospital is not bound to consider the physician's interests before its own (and would probably subject itself to liability if it did so at the risk of a patient's health or well-being), I necessarily agree that there is no fiduciary relationship between a hospital and an attending physician. (*Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1143 [73 Cal.Rptr.2d 695].)

Fourth, I agree that Dr. O'Byrne hasn't come close to showing an intentional interference with his right to practice his profession. (*Willis v. Santa Ana etc. Hospital Assn.* (1962) 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568], overruled on another point in *Cianci v. Superior Court* (1985) 40 Cal.3d 903, 921, 925 [221 Cal.Rptr. 575, 710 P.2d 375].)

For these reasons, I agree with the affirmance.