Filed 12/16/15  Wynns v. Barclays Bank Delaware CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GEORGE S. WYNNS,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>BARCLAYS BANK DELAWARE,<br><br>　　　Defendant and Respondent. | A142846<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-12-524644) |

This case arises from a $900 credit card debt incurred by pro se appellant George S. Wynns with respondent Barclays Bank Delaware (Barclays).  Wynns contends that an accord and satisfaction of the debt was reached when Barclays negotiated his check with a "payment in full" restrictive endorsement for a lesser amount.  Barclays took a different view and continued to bill Wynns for what it considered to be the delinquent account balance.  Wynns sued Barclays for breach of contract, declaratory relief, and violation of Civil Code section 1785.25.  The trial court granted summary judgment for Barclays.  We affirm.

## I.　BACKGROUND

Our review of this matter is complicated by the fact that Wynns cites almost exclusively to his own first amended complaint (FAC) in reciting the "facts."[1]  We are

---

[1] We have reviewed the pleadings and reject Wynns's assertion that Barclays implicitly admitted critical allegations of his pleadings by failure to adequately deny every contention.  For example, in paragraph 6 of the FAC, Wynns alleged that he "wrote to the correspondence department of [Barclays] to complain of the high interest rate,

not reviewing a demurrer to the pleadings, but a grant of summary judgment. In determining the propriety of summary judgment, we look to the evidence submitted in support of and in opposition to summary judgment and that was cited in the separate statement of undisputed facts and the response and reply thereto. (See *Parkview Villas Assn. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1213 [citing " 'golden rule' " of summary judgment that " ' "if it is not set forth in the separate statement, *it does not exist*" ' "].) We disregard evidence if the trial court sustained an objection and the ruling is not challenged on appeal, and we consider evidence if the trial court overruled an objection and the objection is not renewed on appeal.[2] (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 & fn. 1.) We resolve conflicts in the evidence and draw reasonable inferences in the light most favorable to the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We therefore look to Barclays's statement of undisputed material facts and the supporting evidence submitted therewith, and Wynns's amended separate statement of disputed material facts and supporting declarations that he submitted in opposition to Barclays's motion.

In April 2008, Wynns applied for and opened a credit card account with Barclays. Along with his credit card, Wynns was sent a cardmember agreement (Agreement) containing the account terms and conditions. The Agreement, which Wynns accepted,

---

informing [Barclays] that it did not appear to be in compliance with [federal law] because [Barclays] neither reviewed nor adjusted the interest rate on his [credit] card." He contends that Barclays's response that it "admits that it received a correspondence from [Wynns] regarding the Account" and "denies that a bona fide dispute existed between [Wynns] and Barclays" was an admission that Wynns complained of noncompliance with the federal Credit CARD Act of 2009 (Credit Card Accountability, Responsibility and Disclosure Act of 2009 (Pub.L. No. 111-24 (May 22, 2009) 123 Stat. 1734; hereafter Credit CARD Act). We are satisfied that the responses and affirmative allegations of Barclays's answer placed in issue all material allegations of the FAC. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1062, p. 499.) Wynns's arguments border on the frivolous.

[2] The trial court overruled all of Wynns's objections to Barclays's evidence, and Wynns does not renew those objections on appeal.

provides: "By signing, keeping or using your Card or Account, you agree to the terms and conditions of this Agreement." Wynns received an initial promotional interest rate of zero percent on balance transfers and convenience checks, applicable to the first 12 billing cycles. In October 2008, Wynns made a balance transfer to the account in the amount of $1,500. As set forth in the Agreement, the regular annual percentage rate applicable to account balances was 17.99 percent.

In early September 2010 (on or about Sept. 10), Wynns sent Barclays a written request for reduction of the account interest rate and credit for "excessive interest charged." He complained that the rate of 17.99 percent was "exorbitant and unjustified," denied that he had agreed to that rate of interest, and contended that the Credit CARD Act required periodic review and adjustment of his interest rate. By letter dated September 20, Barclays advised Wynns that it declined to make any adjustments to his account. Shortly thereafter (on or about Sept. 27), Wynns wrote to Barclays again. He asserted that the bank had failed to "respond to the issues [he] raised" and enclosed a copy of a complaint letter he had sent to the Federal Deposit Insurance Corporation.[3] Barclays responded by letter dated October 18 and reiterated that the terms and conditions applicable to Wynns's account provided for an interest rate of 17.99 percent. Barclays also asserted that the federal regulations under the Credit CARD Act were inapplicable to Wynns's account.

The balance on Wynns's account, as reflected on his September 2010 monthly billing statement, was $900.81, with a minimum payment of $22.74 due by October 28, 2010. Before Barclays had responded to Wynns's September 27 correspondence, he again wrote to Barclays (on or about Oct. 9) and enclosed a check in the amount of $400. Wynns stated that Barclays had "not responded to the dispute [he] wrote . . . about in [his] previous letters." He proposed to "settle this dispute with you as follows: Your negotiation of the enclosed $400 check will constitute your acknowledgement of my

---

[3] By letter of November 26, 2010, the Federal Deposit Insurance Corporation advised Wynns that his understanding of the Credit CARD Act was incorrect.

paying the account in full. As you know, I have been making all payments in a timely manner for more than the 'minimum balance.' I have no obligation to make any further payments at this time. Thus, you accept and negotiate it [*sic*], your acceptance and negotiation of the enclosed check will constitute a 'satisfaction and accord' pursuant to California law, and my account balance thereafter will be zero." Wynns's account number, and the hand-printed words "Payment in Full" were written in the memo section on the face of the check. Barclays credited the $400 payment to Wynns's account and continued to bill him for the balance. Wynns sent two further letters to Barclays (on or about Nov. 1, 2010 & Jan. 4, 2011) demanding that his account record be revised to reflect a zero balance. Wynns made no further payments, and Barclays ultimately reported Wynns's account to credit reporting agencies as delinquent.

Wynns filed the present action on September 25, 2012, and filed his operative FAC on December 4, 2012. The FAC alleged three causes of action: breach of contract, declaratory relief, and a violation of Civil Code section 1785.25. His breach of contract claim alleged that Barclays breached its obligation, under the terms of the Agreement, to provide an "easy and efficient avenue for dispute resolution"; that Barclays breached a contractual obligation to acknowledge and abide by an accord and satisfaction of the account balance; and that Barclays breached its obligation to deal with Wynns fairly and in good faith. The second cause of action sought a judicial declaration that Barclays negotiation of his $400 check established an accord and satisfaction of the account debt. His third cause of action sought compensatory and punitive damages for furnishing inaccurate information to consumer credit reporting agencies (Civ. Code, §§ 1785.25, 1785.31).

Barclays filed its motion for summary judgment, or in the alternative, summary adjudication, on October 11, 2013. In support of the motion, Barclays submitted a declaration from Peri Hutt, a Barclays employee familiar with its policies and procedures concerning its credit card accounts, and a declaration of its attorney, Raymond Kim, with copies Wynns's discovery responses. Wynns filed an initial opposition on December 13, and an amended separate statement of disputed material facts on December 16. Wynns

4

submitted his own declaration in support of his opposition. In addition to his amended separate statement of disputed material facts, Wynns filed a list of 19 "additional facts not in dispute."

The motion was heard on December 27, 2013. The court granted the motion, finding: "As to the breach of contract cause of action. [Barclays] met its burden in providing evidence that shows that [Wynns] cannot establish each element of this cause of action. [Wynns] cannot establish that he performed under the [Agreement] because the Agreement required monthly payments if there was a balance on the card. It is undisputed that [Wynns] stopped making these payments. [Wynns] cannot establish that the Agreement was breached because the evidence reveals there was no dispute to be resolved. [Wynns] agreed to a 17.99 percent interest rate, pursuant to the unambiguous terms of the Agreement.

"As to the declaratory relief cause of action. [Barclays] has met its burden in providing evidence that an accord and satisfaction did not occur. The unambiguous language of the Agreement states that [Barclays] 'can accept late payments, partial payments, check and money orders marked "Paid in Full" or language having that same effect without losing any of [its] rights under this Agreement.' Further, the undisputed evidence establishes that the amount of the claim was not subject to a bona fide dispute, as required by Cal. [U.] Com. Code [section] 3311."

The court granted summary judgment on the third cause of action on the basis that Barclays had met its burden to show that an accord and satisfaction had not occurred, and that Barclays had not made any inaccurate or incomplete report to the credit reporting agencies. Judgment for Barclays was entered on June 19, 2014. Wynns filed a timely notice of appeal.

## II.   DISCUSSION

### A.   *Standard of Review*

The purpose of a motion for summary judgment is "to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues." (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 873.) Summary judgment is

5

appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The court resolves the question of triable issues by examining 'support[ing] or oppos[ing] . . . affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice . . . may be taken . . . [which] set forth admissible evidence . . . .' " (*Thompson v. Williams* (1989) 211 Cal.App.3d 566, 572–573.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fns. omitted.) When the plaintiff bears the burden of proving facts by a preponderance of the evidence and the defendant moves for summary judgment, the defendant "must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not . . . ." (*Id.* at p. 851.) In ruling on the motion, the court must draw all reasonable inferences from the evidence in the light most favorable to the opposing party. (*Id.* at p. 843.) We review an order granting summary judgment de novo. (*Id.* at p. 860.)

B.     *Accord and Satisfaction*

Wynns's claims all hinge on his contention that Barclays's acceptance of his $400 check resulted in an accord and satisfaction of the entire outstanding balance on his account. " 'An accord is an *agreement* to accept, in extinction of an obligation, something *different from or less than* that to which the person agreeing to accept is entitled.' ([Civ. Code, §] 1521.) '*Acceptance,* by the creditor, of the *consideration of an accord* extinguishes the obligation, and is called *satisfaction.*' ([Civ. Code, §] 1523.) In other words, an accord substitutes a *new executory contract* for a previously existing contract or debt, the usual purpose being to settle a claim at a lesser amount. [Citations.] [¶] Because an accord is an executory contract, it must be based upon a valid *consideration.*" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 950,

6

p. 1044, citing *Shortell v. Evans-Ferguson Corp.* (1929) 98 Cal.App. 650, 654 and *Moving Picture etc. Union v. Glasgow Theaters* (1970) 6 Cal.App.3d 395, 403 ["there must be a bona fide dispute between the parties"].)

"The elements of an accord and satisfaction are:  (1) a bona fide dispute between the parties, (2) the debtor sends a certain sum on the express condition that acceptance of it will constitute full payment, and (3) the creditor so understands the transaction and accepts the sum.  [Citations.] [¶] . . . Whether a transaction constitutes an accord and satisfaction depends on the intention of the parties as determined from the surrounding circumstances, including the conduct and statements of the parties, and notations on the instrument itself." (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1058–1059.)  Normally, whether an accord and satisfaction has been reached is a question of fact. (*Id.* at p. 1059.)

The requirements for an accord and satisfaction based on acceptance of a negotiable instrument are governed by California Uniform Commercial Code section 3311.  "To obtain an accord and satisfaction under California Uniform Commercial Code section 3311, a debtor must prove that:  '(1) [the debtor] in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument . . . .'  [Citation.]  If the debtor further proves that he accompanied the tender with a conspicuous statement that the amount was tendered as full satisfaction of the claim, and if the claimant does not prove that he tendered repayment of the amount within 90 days, the debt is discharged." (*Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 148, fn. omitted.)

1.    *Requirement of a Bona Fide Dispute*

The trial court here found, among other things, that no accord and satisfaction had occurred because there was no genuine dispute to be resolved. We reach the same conclusion.

It is undisputed that Wynns received the Agreement at the time he opened his account with Barclays.  The Agreement provided that use of the account constituted

7

acceptance of its terms and conditions. Wynns acknowledged receipt and acceptance of the Agreement in his verified FAC and acknowledged that he used the account. The Agreement's unambiguous terms provided for a 17.99 percent interest rate (variable), after the initial promotional period. Wynns admitted that Barclays began charging him 17.99 percent interest on his account balance, after expiration of the promotional period "around early 2009," and that he made regular payments "[f]or a number of months afterward."

Wynns's "dispute" with Barclays was based on his contention that the Credit CARD Act required Barclays to periodically review his creditworthiness, and to "adjust the interest rate accordingly if the borrower merits a lower interest rate." In his opposition to the motion for summary judgment, he did not contend, and does not contend here, that the Credit CARD Act in fact supports his position. It seems clear that it does not, and that the 17.99 percent rate charged to Wynns's account balance was in compliance with the requirements of the Credit CARD Act.

We note that Wynns's arguments attempt to dichotomize the terms "bona fide" and "dispute." He argues that, despite the trial court's ruling that there was no dispute, the question of whether his claim that the Credit CARD Act applied to the terms of his account was in good faith was never addressed or resolved. Not so. The trial court found that "the undisputed evidence establishes that the amount of the claim was not subject to a bona fide dispute, as required by Cal. [U.] Com. Code [section] 3311." Wynns seems to suggest that the statutory requirement of a "good faith" tender is an entirely subjective element and necessarily a triable issue of fact, precluding summary judgment. This presupposes that only subjective good faith is required to make the dispute "bona fide" and that only an articulated disagreement, no matter how specious, is necessary to create a "dispute." We disagree on both points.

Wynns is correct that " '[i]t matters not that there was no solid foundation for the dispute' as the test is whether 'the dispute was honest or fraudulent.' " (*Potter v. Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 597.) But "[t]his, in context, also amounts to an objective standard as the word 'honest' when juxtaposed to the word 'fraudulent'

8

conveys the meaning that the dispute must be actual, real or 'bona fide.' " (*FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 803.) "While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be founded in good faith. Without an honest dispute, an agreement to take a lesser amount in payment for the liquidated claim is without consideration and void. An arbitrary refusal to pay, based on the mere pretense of the debtor, made for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule." (*Berger v. Lane* (1923) 190 Cal. 443, 448.)

Wynns asserts that he subjectively believed that the Credit CARD Act required Barclays to review and adjust his interest rate. He does not attempt to suggest, in opposition to the motion or on appeal, how or why he believed this to be true, nor did he articulate in his correspondence with Barclays the basis for his (erroneous) legal interpretation of the statute.[4] He did not suggest when Barclays had first been required to make this "review" of his account, and why his rate would have, in any event, been subject to retroactive adjustment, such as to make the then current balance shown on his account statement in error. "A *legal dispute* between two parties exists, is 'legitimate,' 'genuine,' 'bona fide,' or in 'good faith' where the arguments asserted or positions taken have *objective* legal tenability." (*FEI Enterprises, Inc. v. Yoon, supra,* 194 Cal.App.4th at pp. 805–806.) We find no support for the suggestion that a party's entirely subjective belief, lacking any arguably reasonable basis in fact or in law, suffices to create a bona fide dispute—no matter how sincerely held. Were this the case, even irrational opinions or completely delusional beliefs would suffice to create a "bona fide dispute." Nothing in the evidence submitted suggests that Wynns's position had the slightest objective legal tenability, or that it was even arguable that Wynns actually owed Barclay anything less than the full amount shown on his monthly statement. The evidence established a valid

---

[4] At oral argument, Wynns said his assertion to Barclays was based on the content of a newspaper article he had read. He had not read the Credit CARD Act, nor had he done any research on the issue.

and binding contract between Wynns and Barclays under the terms of the Agreement, and a liquidated amount owing not subject to bona fide dispute.

Wynns argues that the terms of the Agreement are not determinative, because his October 9, 2010 letter to Barclays offered "an independent, unilateral contract . . . entirely separate from the . . . Agreement." He complains that the trial court ignored this "second contract," which he contends Barclays accepted by negotiation of his check. As discussed *ante*, the nature of an accord is that it "substitutes a *new executory contract* for a previously existing contract or debt." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 950, p. 1044.) What Wynns still ignores is the fact that, "[b]ecause an accord is an executory contract, it must be based upon a valid *consideration.*" (*Ibid*.) A "legal obligation to perform an act may not constitute consideration for a contract." (*O'Byrne v. Santa Monica–UCLA Medical Center* (2001) 94 Cal.App.4th 797, 808; see Rest.2d Contracts, § 73, p. 179 ["[p]erformance of a legal duty to a promisor which is neither doubtful nor the subject of honest dispute is not consideration . . ."]; Civ. Code, § 1605 [no contract is formed where promisor receives that to which she is lawfully entitled or where promisee consents to provide what he is lawfully bound to provide].)

Here Barclays received nothing different from what it was already entitled to receive under the Agreement. "There can be no accord and satisfaction unless the creditor agrees to accept something different from or less than that to which he is entitled in extinction of the debt." (*Hurley v. Kazantzis* (1947) 82 Cal.App.2d 378, 381.) Wynns insists that his check could not be considered payment on his account, because no payment was due on his outstanding account balance at the time he tendered his check. We fail to understand the argument. Wynns had a revolving credit account with an outstanding balance—as reflected on his September 2010 account statement—with at least a minimum payment due by October 28, 2010. The fact that his account was not delinquent at the time he sent the check does not mean that he was not then indebted to Barclays for the balance, or that any amount sent prior to the delinquency date would be gratuitous, and could not be considered a "payment" on his account.

10

Wynns's insistence that his restrictive endorsement on his check precluded application of the amount to his account ignores the Agreement terms, which allow Barclays to do just that. This argument again seems to rest upon the premise that his check could not be considered a "payment" subject to the terms of the Agreement because nothing was immediately due on the date of delivery—a premise we have already rejected.

2.      *Other Alleged Contract Breach*

The FAC also asserted that Barclays breached the Agreement by failing to "provide an easy, efficient, user friendly process to acknowledge, review and resolve disputes." Wynns argues that Barclays's "refusal for over a month to respond to [his] dispute" raises a triable issue of fact as to whether or not Barclays satisfied this contractual obligation.[5] Even assuming that the language cited creates an obligation sufficiently definite and certain to be enforced, the undisputed evidence shows that Barclays promptly responded to Wynns's communications, albeit not in the manner Wynns would have liked. Moreover, the trial court correctly found that the evidence established no "dispute" requiring resolution. Wynns further fails to articulate how, in the absence of evidence of any viable claim, he could have suffered cognizable contract damages as a consequence of this alleged breach.

C.      *Declaratory Relief*

The second cause of action, seeking declaratory relief, is entirely derivative of the claim of an accord and satisfaction and fails for the same reasons.

D.      *Consumer Credit Reporting Agencies Act*

The FAC's third cause of action alleged violations of the Consumer Credit Reporting Agencies Act (CCRAA; Civ. Code, §§ 1785.1 et seq.). The CCRAA prohibits "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or

---

[5] Wynns again contends that Barclays's answer to the FAC admitted the breach. We are not persuaded.

11

inaccurate." (Civ. Code, § 1785.25, subd. (a).) The breach alleged by Wynns in the FAC was the reporting of his account as delinquent, despite the claimed accord and satisfaction. Reported information is inaccurate or incomplete if it is " 'patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.' " (*Gorman v. Wolpoff & Abramson, LLP* (9th Cir. 2009) 584 F.3d 1147, 1163 [discussing requirements of completeness and accuracy under federal Fair Credit Reporting Act (FCRA; 15 U.S.C. § 1681 et seq.)]; *Carvalho v. Equifax Information Services, LLC* (9th Cir. 2010) 629 F.3d 876, 890–891 [applying *Gorman* standard].)[6] The court granted summary judgment on the basis that Barclays had met its burden to show that an accord and satisfaction had not occurred, and thus it had not made any inaccurate or incomplete report to the credit reporting agencies. We likewise have concluded that no accord and satisfaction was established, and therefore agree that Barclays accurately reported the delinquency of Wynns's account.

The focus of Wynns's argument on appeal is that Barclays violated Civil Code section 1785.25, subdivision (c) by failure to report that he contested the debt. That section provides: "So long as the completeness or accuracy of any information on a specific transaction or experience furnished by any person to a consumer credit reporting agency is subject to a continuing dispute between the affected consumer and that person, the person may not furnish the information to any consumer credit reporting agency without also including a notice that the information is disputed by the consumer." Wynns insists that he has at least raised a triable issue of fact as to whether Barclays complied with this requirement.

A fundamental difficulty with Wynns's argument is that he did not plead such a violation in the FAC (or seek leave to do so). (See *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1403 ["[t]he pleadings define the issues to be

---

[6] "Because the [CCRAA] is substantially based on the [FCRA], judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." (*Olson v. Six Rivers National Bank* (2003) 111 Cal.App.4th 1, 12.)

considered on a motion for summary judgment"].)  Wynns contends that, even though not specifically pled in his third cause of action, his general pleading allegations were sufficient to raise a claim under subdivision (c) of Civil Code section 1785.25.  Even if we were to accept this argument, his claim still fails because it is preempted by the FCRA.  (See *Gorman v. Wolpoff & Abramson, LLP, supra,* 584 F.3d at pp. 1172–1173; *Sanai v. Saltz* (2009) 170 Cal.App.4th 746.)[7]

Congress amended the FCRA in 1996 "to strictly limit the availability of consumer's state remedies against furnishers of credit information."  (*Sanai v. Saltz, supra,* 170 Cal.App.4th at p. 773.)  The FCRA, as amended, provides:  "No requirement or prohibition may be imposed under the laws of any State—[¶] (1) with respect to any subject matter regulated under—[¶] . . . [¶] (F) section 623 [(15 U.S.C. § 1681s-2)], relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—[¶] . . . [¶] (ii) with respect to section 1785.25[, subdivision] (a) of the California Civil Code (as in effect on September 30, 1996)."  (15 U.S.C. § 1681t(b).)  Civil Code section 1785.25, subdivision (a) is "the only substantive CCRAA furnisher provision specifically saved by the FCRA."  (*Carvalho v. Equifax Information Services, LLC, supra,* 629 F.3d at p. 889; *id.* at pp. 888–889 [finding claim under Civ. Code, § 1785.25, subd. (f) to be preempted].)  Wynns failed to raise any triable issue under the CCRAA.

### III.    DISPOSITION

The judgment is affirmed.  Barclays shall recover its costs on appeal.

---

[7] The parties did not address this issue in their initial briefing, and we requested supplemental briefing.

_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
NEEDHAM, J.

A142846